[No. B023171. Second Dist., Div. Four. Aug. 24, 1987.]

MARIA ATIENZA, Plaintiff and Appellant, v.
MORRIS TAUB, Defendant and Respondent.

COUNSEL

Alan G. Barry for Plaintiff and Appellant.

La Follette, Johnson, De Haas & Fesler, Alfred W. Gerisch, Jr., Melinda W. Ebelhar, Horvitz, Levy & Amerian, Ellis J. Horvitz and Stuart B. Esner for Defendant and Respondent.

OPINION

WOODS, P. J.—This is an appeal from an order of dismissal of an action for professional negligence and intentional infliction of emotional distress brought by Maria Atienza (appellant) against Morris Taub, M.D. (respondent) following the sustaining of a demurrer without leave to amend. We affirm.

The first amended complaint sets forth the following factual allegations which, for the purposes of review, we accept as true: respondent is a licensed physician with a medical practice. On October 20, 1983, appellant went to respondent for treatment of a "phlebitic [*sic*] condition" allegedly sustained as the result of an industrial injury. Appellant's injury also caused her emotional problems but she does not allege that she sought treatment for those problems from respondent.

During the course of treatment, respondent "seduced [appellant] into having sexual relations and an affair with her which lasted until October 31, 1984 . . . ." Both his treatment of appellant for her medical condition and his affair with her ended on October 31, 1984.

On August 16, 1985, appellant filed a complaint for personal injuries alleging two causes of action, professional negligence and willful misconduct. On October 21, 1985, respondent demurred to the complaint. Appellant opposed the demurrer and a hearing was set on November 21, 1985. The record, however, is silent as to whether that hearing was actually held.

The record shows that on December 9, 1985, appellant filed her first amended complaint, alleging professional negligence and intentional infliction of emotional distress. Under professional negligence, appellant alleged that by initiating a sexual relationship with her while she was under his care respondent "failed to adequately care for and treat the [appellant] by virtue of abusing her psychologically while purportedly treating her physically." She also alleged that his conduct violated a fiduciary duty owed

to her by respondent; violated provisions of the Hippocratic oath; and violated the provisions of Business and Professions Code section 726.[1]

In her second cause of action, for intentional infliction of emotional distress, appellant alleged respondent's conduct "demonstrated [his] conscious and reckless disregard for the risk to the health and well-being of" appellant, entitling her to punitive damages.

On January 6, 1986, respondent demurred to the first amended complaint. On March 4, a hearing was held and the demurrer was sustained as to appellant's cause of action for professional negligence, but overruled as to her cause of action for intentional infliction of emotional distress. Thereafter, respondent sought a writ of mandate in Division Five of this court to vacate the trial court's overruling of his demurrer to the second cause of action. On April 28, 1986, an alternative writ was issued and, on June 4, 1986, the trial court vacated its earlier order and sustained the demurrer to the second cause of action without leave to amend.

On July 8, 1986, an order of dismissal was filed applicable to the entire complaint. This appeal ensued.

I

■ This appeal present a question of first impression: can allegations that a physician initiated a sexual relationship with his patient during the time he was treating her for a physical disorder state a cause of action for professional negligence medical malpractice? In our view, the answer turns on whether the sexual relationship was initiated by the physician under the guise of treatment of the patient. In the case at bar, we conclude that it was not.

■ The duty of care owed by a physician to a patient arises in the context of the physician's "effort to accomplish the purpose for which the physician is employed." (BAJI No. 6.00 (7th ed. 1986).) In achieving that purpose the physician must " 'have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and . . . he [must] exercise ordinary care in applying such learning and skill to the treatment of his patient. [Citations.]' " (*Keen* v. *Prisinzano* (1972) 23

---

[1] Section 726 provides in part: "The commission of any act of sexual abuse, misconduct, or relations with a patient . . . which is substantially related to the qualifications, functions, or duties of the occupation for which a license was issued constitutes unprofessional conduct and grounds for disciplinary action for any person licensed under this division . . . ."

Cal.App.3d 275, 279 [100 Cal.Rptr. 82], quoting *Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 86 [147 P.2d 604].)

In Business and Professions Code section 6146, the Legislature has defined professional negligence in the context of health care providers as "a negligent act or omission to act . . . in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that the services are within the scope of services for which the provider is licensed . . . ." (Bus. & Prof. Code, § 6146, subd. (c)(3).) Accordingly, an action for the professional negligence of a physician arises out of the breach of the duty of care owed to the patient by the physician *within* the scope of the patient-physician relationship.

 Appellant maintains that respondent's initiation of a sexual relationship with her breached the duty of care which he owed her as a physician. In support of this contention she cites a number of authorities. Our examination of those authorities leads us to conclude that, while a physician's sexual misconduct can be the basis of a malpractice action, these authorities are distinguishable from the instant case because the sexual relationship in those cases was initiated by the physician purportedly in furtherance of his treatment of the patient. This was not the situation in the case before us.

In *Waters* v. *Bourhis* (1985) 40 Cal.3d 424 [220 Cal.Rptr. 666, 709 P.2d 469], the issue before the Supreme Court was whether the attorney fee limitations in medical malpractice actions set forth in section 6146 of the Business and Professions Code applied to an action, settled prior to trial, that pled both professional negligence and intentional or reckless infliction of emotional distress. The bases of the underlying action were allegations that the physician, a psychiatrist, "induced [the patient] to participate in sexual conduct by suggesting that it was part of the therapy designed to alleviate her sexual inhibitions, and . . . by threatening to have her institutionalized if she did not cooperate." (*Id.* at p. 428.) Rejecting the attorney-defendant's argument that recovery in the underlying action was not based on medical malpractice, the court observed: "In addition to the allegations of intentional misconduct, the complaint alleged that the psychiatrist's course of conduct constituted negligent treatment, and many out-of-state decisions have found that similar instances of sexual conduct between psychiatrist and patient may give rise to a medical malpractice action on just such a basis. [Citations.] . . . . [¶] . . . In such a case, the psychiatrist has breached both the duty imposed on everyone to refrain from intentionally injuring another and the special duty that a psychiatrist owes to his patient

to use due care for the patient's health in the conduct of the therapist-patient relationship." (*Waters* v. *Bourhis, supra,* 40 Cal.3d at pp. 433, 434; fns. omitted.)

In examining out-of-state authorities, we find that allegations of a physician's sexual misconduct have provided a basis for a malpractice action only where the patient has alleged that the physician induced sexual relations as part of the therapy. (*Zipkin* v. *Freeman* (Mo. 1968) 436 S.W.2d 753, 755 [psychiatrist "negligently advised plaintiff she needed further treatment by way of personal and social contacts with him even though such a relationship went beyond accepted psychiatric standards."]; *Roy* v. *Hartogs* (1976) 85 Misc.2d 891 [381 N.Y.S.2d 587, 588] [plaintiff "induced to have sexual intercourse with the defendant as part of her prescribed [psychiatric] therapy."]; *Cotton* v. *Kambly* (1980) 101 Mich.App. 537 [300 N.W.2d. 627, 628] ["Plaintiff alleges that defendant induced her to engage in sexual relations with him as part of her prescribed therapy."].) Under these circumstances, the courts "see no reason for distinguishing between this type of malpractice and others, such as improper administration of a drug or a defective operation. In each situation, the essence of the claim is the doctor's departure from proper standards of medical practice." (*Cotton* v. *Kambly, supra,* 300 N.W.2d at pp. 628-629.)

The relevant authorities therefore agree that a physician who induces a patient to enter into sexual relations is liable for professional negligence only if the physician engaged in the sexual conduct on the pretext that it was a necessary part of the treatment for which the patient has sought out the physician.[2] In the case at bar, however, appellant does not make this allegation. Instead, appellant seeks to combine the care given to her by respondent for her phlebitis and the emotionally destructive effect of her romantic and sexual involvement with him under the rubric of "treatment" simply because the two things took place over the same period of time. Appellant does not allege that she was induced to have sexual relations with respondent in furtherance of her treatment. Essentially, appellant complains that she had an unhappy affair with a man who happened to be her doctor. This is plainly insufficient to make out a cause of action for professional

---

[2] It is not our view that only psychiatrists can be liable for medical malpractice under circumstances involving sexual relations with a patient. Clearly, the key element is not the physician's specialty, but whether, within the scope of his practice, he engaged in sexual relations with a patient under the guise of rendering professional services. The fact that the authorities cited to us and those which we have independently considered, all relate to mental health professionals reflects the greater propensity of psychiatric patients to develop strong emotional dependence upon their physicians in what is called the transference phenomenon and, correspondingly, the greater possibility for emotional exploitation of the patient. (See *Zipkin* v. *Freeman, supra,* 436 S.W.2d at p. 755, fn. 1.)

negligence under any of the theories presented.[3] Accordingly, we affirm the dismissal of appellant's action with respect to the cause of action for professional negligence.

## II

■ Similarly, we affirm dismissal of appellant's second cause of action for intentional infliction of emotional distress. The core of the second cause of action is an allegation of seduction. Indeed, in paragraph 5 of the complaint, incorporated by reference into the second cause of action, appellant alleges that respondent "seduced [her] into having sexual relations and an affair with her . . . ." Such an action for seduction has been abolished by Civil Code section 43.5, which, in part, states: "No cause of action arises for: [¶] . . . . [¶] (c) Seduction of a person over the age of legal consent." (Civ. Code, § 43.5, subd. (c).)

Appellant's reliance on *Roy* v. *Hartogs, supra,* 381 N.Y.S.2d 587, is misplaced. In *Roy,* a New York appellate court held that New York's "anti-heartbalm" statute did not preclude a medical malpractice action based on allegations of a physician's sexual misconduct. However, as we pointed out in our earlier citation of *Roy,* in that case the plaintiff alleged she was "induced to have sexual intercourse with the defendant as part of her prescribed therapy." (*Id.* at p. 588.) Thus, "the injury . . . was not merely caused by the consummation of acts of sexual intercourse with the defendant. Harm was also caused by the defendant's failure to treat the plaintiff with professionally acceptable procedures. [Citations.]" (*Ibid.*)

As we have determined, in the instant case, the sexual relationship between appellant and respondent was outside the scope of the patient-physician relationship. Accordingly, an action for seduction has been alleged

---

[3] Appellant has three theories in connection with the cause of action for professional negligence: breach of fiduciary duty created by the physician-patient relationship; violation of section 726 of the Business and Professions Code; and a violation of the Hippocratic oath. The first two theories necessarily assume that the sexual relationship, which allegedly breached both the fiduciary duty and section 726, occurred within the context of the physician-patient relationship. Since it was not alleged that it was a modality of treatment, there was neither a breach nor a violation. Indeed, section 726, which is a licensing provision, allows the licensing authority to discipline a physician who engages in sexual acts with a patient only if it is "substantially related to the qualifications, functions, or duties of the occupation for which a license was issued . . . ." (Bus. & Prof. Code, § 726.)

Appellant's invocation of the Hippocratic oath as a basis for liability for professional negligence is unsupported by any authority and is without merit.

rather than malpractice. Such action, standing alone, is barred by Civil Code section 43.5.

The judgment of dismissal is affirmed. Respondent to recover costs.

Kingsley, J., and Cole, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1987.

---

* Assigned by the Chairperson of the Judicial Council.