875 F.2d 864
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joyce J. JENNINGS Plaintiff-Appellant,
v.
Dr. Harry FRIEDMAN, Defendant-Appellee.
 No. 88-6046.
 United States Court of Appeals, Sixth Circuit.
 May 25, 1989.
 
 Before KEITH and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this medical malpractice suit, Plaintiff Mrs. Joyce Jennings appeals the district court's decision granting Defendant Dr. Harry Friedman's motion for summary judgment. Plaintiff contends that the district court erroneously concluded that her allegations of a sexual relationship with Defendant while undergoing treatment from him for a back ailment did not raise a genuine issue of material fact regarding a medical malpractice action pursuant to Tennessee law. We find no error in the trial court's decision granting Defendant's motion for summary judgment. Accordingly, we affirm.
 
 
 2
 Plaintiff Mrs. Jennings, who has a history of emotional problems, was receiving treatment for a back ailment while a patient of Defendant Dr. Friedman's at Baptist Memorial Hospital. Plaintiff alleges that on the evening of October 6, 1985, while in the hospital, but prior to having surgery performed on her lower back by Dr. Friedman, Dr. Friedman telephoned her room and invited her to his nearby office for the purpose of a sexual encounter which Plaintiff admits had nothing to do with any medical treatment.[1] Plaintiff was aware of Defendant's sexual desire before going over to his office and engaging in consensual sexual intercourse. A second encounter allegedly occurred on November 11, 1985, five weeks after the October 9, 1985, surgery was performed. By pre-arrangement, Plaintiff drove from her home in Arkansas and met Dr. Friedman in the hotel portion of his office building where they again engaged in consensual sexual intercourse which Plaintiff concedes was unrelated to medical treatment. Soon thereafter, their "relationship" soured and this lawsuit was filed.
 
 
 3
 In her complaint, Plaintiff sought damages for Defendant's alleged medical malpractice as a result of sexual misconduct. The parties conducted discovery, after which Dr. Friedman countered by filing a motion for summary judgment. The district court granted the motion, concluding that "allegations of sexual relations between a physician and his or her patient during the course of treatment do not state a claim for medical malpractice unless the sexual relations were initiated under the guise of treatment of the patient." See Atienza v. Taub, 239 Cal.Rptr. 454 (Cal.App.2d Dist.1987). This timely appeal ensued.
 
 
 4
 On appeal, Plaintiff contends that pursuant to Tennessee law, the district court erred in granting Dr. Friedman's motion for summary judgment on the issue of medical malpractice arising from consensual sexual relations that occurred between Plaintiff and Defendant during the course of their physician/patient relationship. Summary judgment is appropriate, however, if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Although this appeal appears to present a question of first impression, in Tennessee, we agree with the district court that summary judgment was appropriate.
 
 
 5
 In support of her contention that Defendant's initiation of a sexual relationship with her constituted medical malpractice, Plaintiff cites a number of authorities. Upon examining the cited cases, however, we conclude that in order to establish a medical malpractice claim based upon sexual misconduct, a patient must allege that the physician induced sexual relations as part of the therapy.[2] See Atienza v. Taub, 239 Cal.Rptr. at 457; Zipkin v. Freeman, 436 S.W.2d 753, 755 (Mo.1968) (psychiatrist "negligently advised plaintiff she needed further treatment by way of personal and social contacts with him even though such a relationship went beyond accepted psychiatric standards."); Roy v. Hartogs, 85 Misc.2d 891, 381 N.Y.S.2d 587, 588 (1976) (plaintiff "induced to have sexual intercourse with the defendant as part of her prescribed [psychiatric] therapy."); Cotton v. Kambly, 101 Mich.App. 537, 300 N.W.2d 627, 628 (1980) ("Plaintiff alleges that Defendant induced her to engage in sexual relations with him as part of her prescribed therapy."); Andrews v. United States, 732 F.2d 366, 368 (4th Cir.1984) ("[Plaintiff] was convinced by [Defendant] that the best course of treatment for her was to engage in sexual intercourse with him.").
 
 
 6
 In the case at bar, Plaintiff never alleged nor is there any evidence that the sexual relations occurred under the guise of medical care or treatment by the Defendant. Rather, Plaintiff stated several times in her deposition that the acts of sexual intercourse were unrelated to any medical treatment and definitely did not involve medical care.[3] Consequently, we find that Plaintiff's sexual "relationship" with her physician was not within the scope of a patient/physician relationship.
 
 
 7
 Plaintiff does aptly note that the district court's reliance upon Tenn.Code Ann. Sec. 29-26-102(6), dealing with negligent conduct by a physician, was a mistake since that statute had been previously repealed. However, we find that this error was harmless, since the Tennessee Supreme Court has stated that the current Tennessee medical malpractice statute, Tenn.Code.Ann. Sec. 29-26-115, is a codification of the common law elements of negligence. Cardwell v. Bechtol, 724 S.W.2d 739, 753 (Tenn.1987); see Ward v. United States, 838 F.2d 182, 184 (6th Cir.1988). Thus, the common law requirement still exists that in order for a plaintiff to recover for medical malpractice, there must have been a patient/physician relationship within the scope of which the medical malpractice occurred. See Dunbar v. Strimas, 632 S.W.2d 558, 562 (Tenn.App.1981); Osborne v. Frazor, 425 S.W.2d 768, 771 (Tenn.App.1968).
 
 
 8
 Essentially Plaintiff contends that she had an unhappy affair with a man who happened to be her doctor.[4] While Defendant's medical treatment of Plaintiff may have provided the occasion for their meeting, that does not make their subsequently developed consensual sexual relationship one that involved medical care within a patient/physician relationship under Tenn.Code Ann. Sec. 29-26-115. Given the Plaintiff's testimony that her sexual encounter with Defendant had nothing to do with medical treatment, we find no breach of a duty of care within the scope of the patient/physician relationship. Although possibly unethical and a violation of the Hippocratic oath, Defendant's actions did not constitute medical malpractice. Accordingly, the district court properly granted Defendant's motion for summary judgment.
 
 
 9
 For the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 Dr. Friedman categorically denies ever having a sexual encounter with Mrs. Jennings. But, because the district court disposed of Mrs. Jennings' claim on summary judgment, we will review the factual record in the light most favorable to Mrs. Jennings
 
 
 [2]
 Although most of Plaintiff's cited authority relates to psychiatrists, we recognize that physicians other than psychiatrists can be liable for medical malpractice under circumstances involving sexual relations with a patient. The critical inquiry, however, is not the physician's specialty, but whether a physician engaged in sexual relations with a patient under the guise of rendering professional services. See Atienza, 239 Cal.Rptr. at 457 n. 2
 
 
 [3]
 Regarding the October 6, 1985 sexual encounter, in response to the question "There was no connection with any medical treatment, was it?", Plaintiff answered, "no." Regarding the November 11, 1985 encounter, in response to the question "All right. So, coming over here had nothing to do with any medical treatment?", Plaintiff stated, "Oh no, not then, not the 11th." Furthermore, Plaintiff answered the question "The acts of sexual intercourse were separate from any medical treatment: right?" by responding "Well, yes it was."
 
 
 [4]
 Regarding the November 11th encounter, the following exchange occurred in the deposition of Mrs. Jennings:
 Q: But none of this had anything to do with medical treatment, did it? You weren't being treated by a doctor on this occasion; correct?
 A: Well, I was on the floor with a doctor having sexual intercourse in his office and in a bed with him.
 Q: With a man who happened to be a doctor?
 A: Yes, that's right.