Jane ODEGARD, Appellant,

v.

Charles O. FINNE, III, Respondent.

No. C3-92-2377.

Court of Appeals of Minnesota.

May 18, 1993.

Laurel E. Learmonth, Primus Law Office, Minneapolis, for appellant.

Donna J. Blazevic, Charles E. Lundberg, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent.

Considered and decided by HARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Jane Odegard seeks review of the district court's grant of summary judgment against her medical malpractice and intentional infliction of emotional distress claims. We affirm.

## FACTS

Odegard suffered from ulcerative colitis for a number of years. Respondent Charles O. Finne, III performed 11 surgeries on her from 1987 through 1989, but the surgeries did not improve her condition. Her condition significantly affected her life. She was unable to eat solid food, she lost weight, she felt ugly, she felt unable to control her own body, and she felt she was not sexually attractive. Her condition affected her relationships with her husband and her two sons, and at one point she prepared herself to die. She was counseled by a therapist from April 1988 through about February 1990 to help her cope with these problems.

The last surgery performed by Dr. Finne in May 1989 was successful, and Odegard's condition improved dramatically. At the conclusion of a June 9, 1989 post-operative appointment, Dr. Finne told Odegard that he would no longer be her surgeon and all her future care would be with another physician in his office. Thereafter, other physicians provided her care, with the exceptions that on June 13 Dr. Finne repaired her Hickman catheter in a hospital emergency room, in September he irrigated her ileostomy, and from June through October he provided her with some prescription drugs.

Shortly after the June 9, 1989 post-operative appointment in Dr. Finne's office, Odegard and Dr. Finne began a romantic relationship, though they dispute who initiated it. They began clandestine meetings on a regular basis. Dr. Finne asked Odegard to marry him, and she accepted. The marriage was to occur after they had divorced their spouses. They moved into an apartment on July 26 and had sexual relations for the first time. On October 9, 1989, Dr. Finne moved out of the apartment and ended the relationship because he decided to return to his wife and child.

Odegard alleges she suffered harm from her relationship with Dr. Finne, including depression, anxiety, an impairment of her ability to trust, and guilt from abandoning her children. She incurred significant therapy costs for herself and her children. In June 1991 she initiated a medical malpractice action against Dr. Finne and later made an additional claim for intentional infliction of emotional distress. In August 1992 the district court granted Dr. Finne's motion for summary judgment on both claims. Judgment was entered, and this appeal followed.

## ISSUES

1. Should the district court have granted summary judgment in favor of Dr. Finne on Odegard's medical malpractice claim?

2. Should the district court have granted summary judgment in favor of Dr.

Finne on Odegard's alternative theory of liability under Minn.Stat. § 148A.02 (1988)?

3. Should the district court have granted summary judgment in favor of Dr. Finne on Odegard's intentional infliction of emotional distress claim?

## ANALYSIS

■■■ Summary judgment shall be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law.

Minn.R.Civ.P. 56.03. A court reviewing a grant of summary judgment must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The reviewing court " 'must take a view of the evidence most favorable to the one against whom the [summary judgment] motion was granted.' " *Offerdahl*, 426 N.W.2d at 427 (quoting *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954)). All doubts and factual inferences must be resolved in favor of the nonmoving party. *See Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

■■■ 1. It is an issue of first impression in Minnesota whether a medical malpractice claim can be based upon a sexual relationship between a physician and a patient being treated by the physician for a physical condition. We begin our analysis by reviewing two Minnesota Supreme Court cases which discuss insurance coverage for sexual contact by a physician and a psychologist respectively.

In *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130 (Minn.1984), a general practice physician sexually assaulted three minor males while treating their various physical injuries during regularly scheduled visits to his clinic. *Id.* at 131. The sexual contact was committed by the physician under the guise of medical treatment. *Id.* The supreme court concluded the sexual contact was not part of the patients' medical treatment, and it reiterated the trial court's findings that the acts were done merely for the physician's prurient interest. *Id.* at 132. The supreme court held "the acts of sexual contact involved neither the providing nor withholding of professional services" and therefore denied insurance coverage under the policy. *Id.*

Several jurisdictions have interpreted this case to stand for the general rule that a physician's sexual relationship with a patient is not actionable as medical malpractice. *See Simmons v. United States*, 805 F.2d 1363, 1366 (9th Cir.1986); *Collins v. Covenant Mut. Ins. Co.*, 604 N.E.2d 1190, 1196 (Ind.Ct.App.1992). We do not believe *Smith* is controlling, but it is instructive nonetheless.

Odegard relies in part on *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698 (Minn.1990). In *Love*, a therapist treated an adult woman for marital problems and childhood sexual abuse. For about two months, they "engaged in sexual intimacies" at the therapist's office and at other places while treatment continued. *Id.* at 699. The patient claimed the therapist committed malpractice by mishandling the "transference" phenomenon, causing aggravation of the emotional disorder for which the patient was being treated.[1] *Id.* at 700. The supreme court stated it is malpractice for a therapist to mishandle the transference phenomenon and take sexual advantage of a patient. *Id.* The court held there was insurance coverage because the therapist was treating the patient's emotional and sexual problems, and the patient's alleged damages were related to the problems that were being treated. *Id.* at 701–02.

---

1. The court defined transference:

This phenomenon is the "process whereby the patient displaces on to the therapist feelings, attitudes and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly."

*Love*, 459 N.W.2d at 700 (quoting S. Waldron–Skinner, *A Dictionary of Psychotherapy* 364 (1986)).

Odegard claims the *Love* case supports her medical malpractice claim against Dr. Finne because she presented to the district court expert testimony from a medical doctor that transference occurred in the physician-patient relationship with Dr. Finne. The critical distinction, however, is that transference is not part of the *medical* relationship between Odegard and Dr. Finne. Transference is not a recognized component in the medical treatment of physical conditions. *See id.* at 702.

As the court stated in distinguishing between the facts in *Smith* and *Love:*

Ordinarily, if a medical doctor, such as in *Smith,* engages in sexual conduct with the patient, the patient's physical injuries and condition are not made worse; despite the personal relationship, the medical doctor can still properly treat the physical condition.

*Id.* at 701. The facts before this court are more similar to *Smith* than to *Love.* Dr. Finne successfully treated Odegard's physical condition; the treatment was unaffected by their sexual relationship. *Love* does not support Odegard's medical malpractice action.

Neither *Smith* nor *Love,* however, is dispositive. Therefore, we look to the law of other jurisdictions. The general rule is that a medical malpractice claim cannot be based upon a sexual relationship between a physician and a patient being treated by the physician for a physical condition. *E.g., Simmons,* 805 F.2d at 1366 ("We note that courts do not routinely impose liability upon physicians in general for sexual contact with patients," citing *Smith,* 353 N.W.2d at 130.); *Atienza v. Taub,* 194 Cal. App.3d 388, 239 Cal.Rptr. 454, 457 (1987) ("In examining out-of-state authorities, we find that allegations of a physician's sexual misconduct have provided a basis for a malpractice action only where the patient has alleged that the physician induced sexual relations as part of the therapy."), *pet. for rev. denied* (Cal. Nov. 12, 1987); *Collins,* 604 N.E.2d at 1196 ("The general rule is that a physician's sexual relationship with a patient does not constitute rendition of health care services, and is not action-

able as malpractice," citing *Smith,* 353 N.W.2d at 130.).

Dr. Finne relies on *Atienza,* which is directly on point with the facts before us. In *Atienza,* an adult woman was treated by a physician for phlebitis. *Atienza,* 239 Cal. Rptr. at 455. The injury also caused emotional problems, but the physician was not treating her emotional problems. *Id.* She alleged that during the course of treatment the physician seduced her into having sexual relations and an affair. *Id.* The affair ended when her phlebitis treatment was completed. *Id.*

The patient sued for medical malpractice and intentional infliction of emotional distress, alleging the physician " 'failed to adequately care for and treat [her] by virtue of abusing her psychologically while purportedly treating her physically.' " *Id.* The trial court granted demurrer, i.e., dismissed both causes of action for failure to state a claim. *Id.* at 456.

The California appellate court stated both psychiatrists and physicians can be liable for medical malpractice for having sexual relations with a patient. *Id.* at 457 n. 2. Liability is determined by "whether, within the scope of his practice, he engaged in sexual relations with a patient under the guise of rendering professional services." *Id.* The court affirmed the dismissal, holding the sexual relationship was "outside the scope of the physician-patient relationship." *Id.* at 458. The court concluded:

Appellant does not allege that she was induced to have sexual relations with respondent in furtherance of her treatment. Essentially, appellant complains that she had an unhappy affair with a man who happened to be her doctor. This is plainly insufficient to make out a cause of action for professional negligence.

*Id.* at 457.

We find the reasoning in *Atienza* persuasive and apply it to the case before us. The dispositive fact is that Odegard is not claiming her affair with Dr. Finne was part of her treatment. Also, she is not claiming her colitis treatment was unsuccessful or deficient. Furthermore, we find it signifi-

cant that the affair occurred after, or at the very end of, Dr. Finne's successful treatment of her condition. The district court properly granted summary judgment on Odegard's medical malpractice claim.

■ 2. Odegard argues an alternative theory of liability supports her claim, even if her medical malpractice theory fails. She argues Minn.Stat. § 148A.02 (1988) is applicable. Only psychotherapists are liable under this statute. *Id.* Dr. Finne is not a psychotherapist under the definition in the statute because there is no evidence he was performing or purporting to perform psychotherapy on Odegard. *See* Minn.Stat. § 148A.01, subds. 5, 6 (1988) (defining "psychotherapist" and "psychotherapy"). Therefore, he cannot be liable under the statute.

■ 3. Odegard must prove four elements to establish her claim against Dr. Finne for intentional infliction of emotional distress:

(1) the conduct must be extreme and outrageous;

(2) the conduct must be intentional or reckless;

(3) [the conduct] must cause emotional distress; and

(4) the distress must be severe.

*Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983). This tort is sharply limited to cases involving particularly outrageous facts, and the conduct giving rise to the distress must be " 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.' " *Id.* at 439 (quoting *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648, 652 n. 3 (Minn.1979)). First, the claim fails because Odegard does not explain what conduct of Dr. Finne's was (1) extreme and outrageous or (2) intentional or reckless.

Second, Odegard argues her depression, for which she must take medication, her impairment of her ability to trust, and her damaged relationship with her children is evidence of her severe emotional distress. We agree with the district court that these alleged damages are insufficient to make out a claim for intentional infliction of emotional distress. *See, e.g., Hubbard,* 330 N.W.2d at 440 (plaintiff's claim of depression, vomiting, stomach disorders, skin rash, and high blood pressure was insufficient where plaintiff did not miss work, did not make workers' compensation claim, and did not see doctor until much later). Furthermore, Odegard failed to present any evidence linking her alleged damages to any actions by Dr. Finne. *See Bohdan v. Alltool Mfg. Co.,* 411 N.W.2d 902, 908 (Minn.App.1987) (summary judgment upheld where plaintiff failed to produce evidence linking alleged disorders to alleged intentional conduct), *pet. for rev. denied* (Minn. Nov. 13, 1987).

### DECISION

The district court properly granted summary judgment in favor of Dr. Finne on Odegard's medical malpractice and intentional infliction of emotional distress claims.

**Affirmed.**