526 So.2d 969 (1988)
Donna Lee BUCHANAN, et al., Appellants,
v.
Robert A. LIEBERMAN, M.D., et al., Appellees.
No. 87-1716.
District Court of Appeal of Florida, Fifth District.
May 26, 1988.
Roger D. Helms of Troutman, Williams, Irvin, Green & Troutman, P.A., Winter Park, for appellants.
Thomas M. Burke and Chris N. Kolos of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, P.A., Orlando, for appellees.
DANIEL, Judge.
This is an appeal by the plaintiffs below, Donna Buchanan and her husband, from a final summary judgment entered in favor of the defendants below, Dr. Robert Lieberman and Robert A. Lieberman, M.D., *970 P.A., (Lieberman) on the basis that the Buchanans' action was barred by the two-year statute of limitations for medical malpractice actions.
On August 28, 1985, the Buchanans filed suit against Lieberman and the Florida Patient's Compensation Fund, which was later dropped as a party defendant. The Buchanans' amended complaint alleged that "On or about September 1, 1981, during an office visit, Robert A. Lieberman, M.D. committed a battery on plaintiff, Donna Lee Buchanan, in that he fondled her breast for purposes of his sexual gratification and forcibly kissed the Plaintiff while holding her head to stop her from resisting." The complaint further alleged that this activity on the part of the doctor was against the will and without the consent of Donna Buchanan. The amended complaint is in two counts, one for battery against Lieberman individually and one for negligence against his professional association for its negligence in failing to prevent the activities complained of.
The trial court ultimately held that the action was barred by the two-year statute of limitations for medical malpractice. The trial court found that the incident alleged in the amended complaint occurred to Mrs. Buchanan as a patient of Lieberman in his medical offices during a scheduled visit and "but for" a physician/patient relationship, the event would not have occurred as alleged. Accordingly, the trial court entered a final summary judgment in favor of Lieberman.
The Buchanans have appealed, contending that the trial court erred in applying the two-year medical malpractice statute of limitation to bar their action against Dr. Lieberman and his professional association. We agree and reverse.
Section 95.11(4)(b), Florida Statutes (1981), provides in part as follows:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care... . (emphasis supplied).
In Jackson v. Biscayne Medical Center, Inc., 347 So.2d 721 (Fla. 3rd DCA 1977), appellant Jackson filed a complaint against appellees Biscayne Medical Center, Inc. and others, claiming that he had been wrongfully removed from the medical center without medical authorization. In seven counts, the complaint alleged negligence, negligent training, false arrest, malicious prosecution, assault and battery, slander and breach of contract. The appellees filed a motion to dismiss the complaint based in part on a failure to comply with the medical liability mediation panel prerequisite of section 768.133, Florida Statutes (1977), then renumbered as section 768.44, Florida Statutes (1976 Supp.). The motion was granted.
On appeal, the third district held that counts I and II, couched in terms of negligence and negligent training of hospital employees, were within the purview of section 768.44 and were required to be submitted to a medical liability mediation panel before being maintained in a court of law. However, the court held that the remaining counts were not subject to the medical liability mediation panel requirements:
Counts III through VII, however, have no connection with medical negligence (malpractice). Appellant was allegedly falsely arrested and maliciously prosecuted for trespassing at the hospital. In an attempt to remove appellant from the hospital premises, employees of the hospital allegedly assaulted and battered appellant, and slandered him while he was *971 being arrested for trespassing. Also alleged as a specific count was breach of contract by appellee, for the wrongful removal of appellant from the hospital.
We are of the opinion that the above counts, as alleged, do not fall within the scope of Section 768.44, Florida Statutes (1976 Supp.). Appellees contend that since all of the complained of acts arise from one "transaction," i.e., the alleged wrongful removal of appellant from the hospital without medical authorization, each count should be subject to the mediation prerequisite. We disagree. None of the remaining causes of action deal with medical malpractice. Simply stated, they are all intentional acts, allegedly committed by hospital employees on hospital premises, while within the scope of their employment. The fact that these acts originate, rather remotely, from a hospital-patient relationship, will not bring them into the ambit of medical malpractice. To hold otherwise would lead to the absurd result that every wrongful act committed by a hospital employee in a hospital surrounding amounts to medical malpractice. Certainly, our Legislature did not desire those results. It is therefore our view, that the trial judge erred in dismissing counts III through VII on the basis that they should have proceeded pursuant to the mediation prerequisite of Section 768.44, Florida Statutes (1976 Supp.).
347 So.2d at 722-723.
In Zobac v. Southeastern Hospital District of Palm Beach County, 382 So.2d 829 (Fla. 4th DCA 1980), Zobac filed suit against the hospital for personal injuries sustained while he was a patient at the hospital. The complaint alleged that while Zobac was a patient in the hospital, he arose during the night to use the bathroom facilities. As he entered the bathroom he first turned to close the door prior to switching on the bathroom light so as to not awaken the other patient in the room; he slipped, fell and injured himself. The complaint further alleged that water left on the bathroom floor by hospital cleaning personnel was responsible for Zobac's fall.
The hospital moved to dismiss the complaint on the basis that it alleged a claim for damages against a health care provider and that such a suit for recovery of damages was precluded by section 768.44, Florida Statutes, unless the plaintiff first submitted the claim to an appropriate medical liability mediation panel. The trial court granted the motion.
On appeal, the fourth district held that this situation did not involve medical malpractice and accordingly reversed the judgment in favor of the hospital:
Section 768.45, Florida Statutes (1977) provides that in a suit to recover damages for negligence against a health care provider the claimant shall have the burden of proving that the provider's conduct represented a breach of the accepted standard of care for that health care provider. An isolated reading of that statutory section could lead one to assume it was thereby intended to include every type, nature and description of negligence by a health care provider. However, read in context with other statutory and rule provisions applicable to Medical Liability Mediation, it is clear to us that the legislative intent was to submit to Medical Liability Mediation only claims arising out of those acts or conduct which are peculiarly malpractice when committed by a medical or osteopath physician, podiatrist, hospital, or health maintenance organization. Malpractice by definition means "a dereliction from professional duty or a failure of professional skill or learning that results in injury, loss or damage." It does not include janitorial negligence, for example, or a breach of duty in maintaining the hospital grounds generally required of possessors of land. That the concept of medical liability mediation pertains only to malpractice and not generalized negligence is borne out by an examination of the statutes and rules pertaining thereto... .
382 So.2d at 830-831.
In Durden v. American Hospital Supply Corporation, 375 So.2d 1096 (Fla. 3rd DCA 1979), Durden sold his blood to American *972 Hospital Supply Corporation and in so doing, contracted infectious hepatitis. Durden filed suit against American alleging that American was negligent in using a dirty needle, in failing to use a clean, sterilized needle and in failing to properly inspect the needle for cleanliness prior to use. American moved to dismiss the complaint as being barred by the two-year statute of limitations for medical malpractice. The trial court granted the motion and dismissed the complaint.
On appeal, the third district held that the four-year statute of limitations for general negligence rather than the two-year statute for medical malpractice applied:
Construing Section 95.11(4)(b) in its plain and ordinary sense, it is apparent that more than just the fact that a party defendant is a health care provider is required to bring a cause of action within this two-year statute of limitations. In addition, the claim for damages must arise as a result of medical, dental or surgical diagnosis, treatment or care on the part of the health care provider. See Jackson v. Biscayne Medical Center, Inc., 347 So.2d 721, 722 (Fla. 3d DCA 1977). Durden sold his blood to American. There was no medical, dental or surgical diagnosis, treatment or care rendered by American to Durden. The relationship contemplated by the subject statute of limitation is in the nature of doctor (dentist)-patient or hospital-patient in contrast to the vendor-vendee relationship in the case at bar. Durden's third amended complaint is grounded upon allegations of ordinary negligence and, therefore, the four-year statute of limitations, Section 95.11(3)(a), Florida Statutes (1977) is applicable.
375 So.2d at 1099.
In the present case, the Buchanans alleged that Dr. Lieberman was a physician engaged in the practice of obstetrics and gynecology, that Mrs. Buchanan was a patient of Dr. Lieberman, and that Dr. Lieberman committed a battery on Mrs. Buchanan by fondling her breasts for the purposes of his sexual gratification and forcibly kissing her while holding her head to stop her from resisting. Thus, the injuries allegedly suffered by Mrs. Buchanan arose from a battery and not from any medical diagnosis, treatment or care by Dr. Lieberman. The battery only remotely arose from a doctor-patient relationship, that is, the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctor's office. Had Dr. Lieberman assaulted Mrs. Buchanan at a bar, that act would not be considered "medical malpractice". The result should not be any different simply because of the locality of the act. Since the act complained of is not medical malpractice for the purposes of the medical malpractice statute of limitations, the two-year statute should not have been applied to bar this action.
This conclusion is supported by an opinion from the California Court of Appeal. In Atienza v. Taub, 194 Cal. App.3d 388, 239 Cal. Rptr. 454 (Cal. App. 2 Dist. 1987), Maria Atienza went to Dr. Taub for treatment of phlebitis. During the course of treatment, Dr. Taub allegedly seduced Atienza into having sexual relations with him. Atienza filed a complaint against him for professional negligence and willful misconduct. The complaint was ultimately dismissed.
On appeal, the court noted that this case presented a question of first impression, that is, can allegations that a physician initiated a sexual relationship with his patient during the time he was treating her for a physical disorder state a cause of action for professional negligence medical malpractice. The court concluded that the answer will turn on whether the sexual relationship was initiated by the physician under the guise of treatment of the patient:
The relevant authorities therefore agree that a physician who induces a patient to enter into sexual relations is liable for professional negligence only if the physician engaged in the sexual conduct on the pretext that it was a necessary part of the treatment for which the patient has sought out the physician. In the case at bar, however, appellant does not make this allegation. Instead, appellant seeks to combine the care given to her by *973 respondent for her phlebitis and the emotionally destructive effect of her romantic and sexual involvement with him under the rubic of "treatment" simply because the two things took place over the same period of time. Appellant does not allege that she was induced to have sexual relations with respondent in furtherance of her treatment. Essentially, appellant complains that she had an unhappy affair with a man who happened to be her doctor. This is plainly insufficient to make out a cause of action for professional negligence under any of the theories presented. Accordingly, we affirm the dismissal of appellant's action with respect to the cause of action for professional negligence.
239 Cal. Rptr. at 457.
Here the Buchanans do not allege that Mrs. Buchanan was seeing Dr. Lieberman for the treatment of any emotional or sexual problems. Nor are there allegations that Dr. Lieberman engaged in this conduct under the guise of medical diagnosis, treatment or care or that he induced Mrs. Buchanan to engage in sexual acts with him under the guise of medical diagnosis, treatment or care. Thus the acts by Lieberman are not medical malpractice for purposes of applying the medical malpractice statute of limitations.
Lieberman, however, argues that Florida has declared sexual misconduct to be professional malpractice by statute. Section 458.329, Florida Statutes, provides as follows:
Sexual misconduct in the practice of medicine
The physician-patient relationship is founded on mutual trust. Sexual misconduct in the practice of medicine means violation of the physician-patient relationship through which the physician uses said relationship to induce or attempt to induce the patient to engage, or to engage or attempt to engage the patient, in sexual activity outside the scope of the practice or the scope of generally accepted examination or treatment of the patient. Sexual misconduct in the practice of medicine is prohibited.
This quoted section is part of chapter 458, Florida Statutes, which regulates physicians and sets minimum requirements for safe practice by physicians and simply prohibits physicians from using their treatment, care or therapy as a means of inducing the patient to engage in sexual activity. In the cases cited by Lieberman in which sexual misconduct was considered malpractice, the physician had engaged in sexual relations under the guise of treatment or by psychological manipulation of his patient. See, e.g., Zipkin v. Freeman, 436 S.W.2d 753 (Mo. 1968) (through his psychiatric treatment of plaintiff, physician manipulated her to the point where she left her husband, moved in with physician and invested in his enterprises); L.L. v. Medical Protective Company, 122 Wis.2d 455, 362 N.W.2d 174 (Wis.App. 1984) (plaintiff went for treatment for emotional disorders and physician apparently engaged in sexual activity with her as part of her therapy); Cotton v. Kambly, 101 Mich. App. 537, 300 N.W.2d 627 (Mich. App. 1980) (physician induced plaintiff to engage in sexual intercourse with him during the course or under the guise of treatment); Aetna Life & Casualty Company v. McCabe, 556 F. Supp. 1342 (E.D.Pa. 1983) (physician's treatment of patient with illicit or contraindicated drugs, sexual involvement and mishandling of "transference" was medical malpractice). In contrast, here there were no allegations that Dr. Lieberman used his relationship to induce or to attempt to induce Mrs. Buchanan to engage in sexual relations with him. Rather, the complaint essentially alleges that Mrs. Buchanan was attacked by Dr. Lieberman.
REVERSED and REMANDED for further proceedings.
COBB and COWART, JJ., concur.