899 So.2d 336 (2005)
Susan R. BURKE, Appellant,
v.
Arthur SNYDER, D.O. and Nova Southeastern University, Inc. d/b/a Nova Southeastern University Osteopathic Treatment Center, jointly and severally, Appellees.
No. 4D02-2838.
District Court of Appeal of Florida, Fourth District.
March 2, 2005.
Rehearing Denied May 5, 2005.
Susan R. Burke, Delray Beach, pro se.
David R. Cassetty, Coral Gables, for Appellee-Nova Southeastern University, Inc. d/b/a Nova Southeastern University Osteopathic Treatment Center.

*337 EN BANC

TAYLOR, J.
Susan Burke, plaintiff below, appeals the dismissal with prejudice of her third amended complaint against Nova Southeastern University's osteopathic treatment center. The trial court dismissed the complaint, relying upon our decision in O'Shea v. Phillips, 746 So.2d 1105 (Fla. 4th DCA 1999), rev. den., 767 So.2d 459 (Fla.2000) (holding that pre-suit notice and screening requirements under Florida's medical malpractice statute apply to a claim against a health care facility for negligent supervision or retention of a doctor accused of sexual misconduct during a medical examination). For the reasons stated below, we recede from O'Shea and reverse the dismissal of appellant's complaint.
On May 14, 2001, the plaintiff filed her initial complaint against Arthur Snyder, D.O., and the Nova Southeastern University Osteopathic Treatment Center (Nova), seeking damages for injuries resulting from an alleged sexual battery on plaintiff by Dr. Snyder during a medical examination at the treatment center on May 15, 1997. According to her third amended complaint, the plaintiff had been referred to Nova for osteopathic treatment for temporomandibular joint (TMJ) complaints of head and jaw pain and vertigo. She met with Dr. Snyder at Nova on May 15, 1997 for her scheduled office visit. After a brief discussion about her symptoms and medication, Dr. Snyder directed her to lie face down on a treatment table, and he began palpating her back. The complaint goes on to allege the following:
Then, suddenly and unexpectedly, without the knowledge or consent of plaintiff, and against her will and without any encouragement or inducement by plaintiff, Defendant SNYDER, suddenly, by surprise, violently and forcibly shoved his rigid hand up between plaintiffs legs into her genitals, deeply penetrating her vagina, urethra, anus, and rectum with his rigid fingers, and began to roughly and intently dig and tear back and forth internally into these orifices, organs and the soft tissues, musculature, fascia and nerves surrounding these most personal, private, sensitive and intimate parts of plaintiffs body stretching, ripping, tearing and otherwise molesting and mutilating them.
The plaintiff alleges that the attack left her incontinent and impotent and caused severe injuries, both physical and psychological.
The plaintiff's third amended complaint contains fifteen counts asserting various theories of liability as a result of the alleged sexual battery. Count XIV of the complaint alleges that Nova is vicariously liable for Dr. Snyder's conduct and directly liable for its negligent hiring, supervision, and retention of Dr. Snyder. As to these claims, the plaintiff alleges that Nova knew or should have known of Dr. Snyder's dangerous violent propensity to commit deviant sexual acts upon clients.
As stated above, the plaintiffs initial complaint was filed on May 14, 2001, just a day shy of four years from the alleged attack. Because the plaintiff did not comply with the notice and pre-suit screening requirements for medical malpractice actions or file suit within the two-year statute of limitations for such claims, Nova moved to dismiss the third amended complaint with prejudice. In response, plaintiff contended that her claims were not based on acts "arising out of the rendering of medical care" and thus fell outside the presuit requirements and the limitations period for medical malpractice. The trial court, however, agreed with Nova that the medical malpractice statute applied to plaintiff's action and granted the motion, *338 citing O'Shea v. Phillips, 746 So.2d 1105 (Fla. 4th DCA 1999), rev. den., 767 So.2d 459 (Fla.2000). Plaintiff appealed the dismissal.
In O'Shea, we affirmed the trial court's dismissal of a similar suit, holding that the presuit requirements of Chapter 766, Florida Statutes (1997) apply to a claim that a health care facility negligently supervised or retained an employee who sexually assaulted a patient. There, the plaintiff and his wife had sued the Cleveland Clinic Florida for negligent supervision and retention of a neurologist who allegedly committed a sexual battery upon the plaintiff by anal digital penetration in a clinic examination room. The plaintiffs in that case, as the plaintiff here, did not comply with Chapter 766's notice and presuit screening requirements before filing suit. We concluded that the O'Sheas' complaint stated a claim for medical malpractice and was thus subject to presuit notice and screening procedures under Chapter 766, Florida Statutes.
We began our analysis in O'Shea by discussing Chapter 766, Florida Statutes (1997), which imposes pre-suit notice and screening requirements for medical negligence claims. O'Shea, 746 So.2d at 1106. We then noted that the Florida Supreme Court has read the two definitions of "medical negligence" found in sections 766.106 and 766.202, Florida Statutes, together, and concluded that medical negligence claims are claims that "`aris[e] out of the rendering of, or the failure to render, medical care or services.'" J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 949 (Fla.1994).
To determine whether the O'Sheas' claim against the clinic for negligent supervision and retention "arises out of the rendering of, or the failure to render, medical care or services," we examined section 766.110, Florida Statutes (1997). This section provides that all health care facilities, including hospitals and ambulatory surgical centers as defined in Chapter 395, have a duty to assure comprehensive risk management and the competence of their medical staffs through careful selection and review. See Fla. Stat. § 766.110(1) (1997). It further provides for liability where the health care facility fails to exercise due care in fulfilling its duties in this regard. Among the specific duties assigned by this section is the adoption of a comprehensive risk management program which fully complies with the substantive requirements of Fla. Stat. 395.0197, as appropriate to such hospitals size, location, scope of services, physical configuration, and similar relevant factors. Fla. Stat. 766.110(1)(b) (1997).
One component of an internal risk management program, which was added by legislative amendments to section 395.0197 in 1995, concerned a health care facility's responsibility for investigating and reporting allegations of sexual misconduct by an employee on a health care facility's grounds.
On motion for rehearing in O'Shea, we clarified that we did not rely upon the 1995 amendments to Chapter 395 (addressing sexual misconduct) in concluding that the O'Sheas' complaint stated a claim for medical malpractice subject to the presuit notice and screening procedures. We explained that Chapter 766 presuit requirements apply to claims of negligent supervision and retention of the clinic's physician/employee because "a claim of sexual misconduct by a doctor during a medical examination or procedure is a `claim arising out of the rendering of ... medical care or services.'" 746 So.2d at 1109. In other words, we looked at the nature of the underlying conduct in characterizing the health care facility's statutory liability under Fla. Stat. 766.110 as medical negligence *339 liability, rather than administrative negligence.
However, our conclusion that the underlying conduct, i.e., "sexual misconduct by a doctor during a medical examination, is a `claim arising out of the rendering of ... medical care or services'" conflicts with decisions of other district courts.
In Buchanan v. Lieberman, 526 So.2d 969 (Fla. 5th DCA 1988), a patient alleged that her doctor committed a battery upon her during a scheduled office visit by fondling her breasts for purposes of sexual gratification and forcibly kissing her. She sued the doctor and his professional association for injuries resulting from the alleged assault. Her amended complaint contained two counts: one for battery against the doctor individually and one for negligence against his professional association for failing to prevent the battery. The trial court entered summary judgment for the defendants based on the two-year statute of limitations for medical malpractice actions. In reversing, the fifth district held that the conduct complained of did not involve medical malpractice. The court stated:
[T]he injuries allegedly suffered by Mrs. Buchanan arose from a battery and not from any medical diagnosis, treatment or care by Dr. Lieberman. The battery only remotely arose from a doctor-patient relationship, that is, the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctors office. Had Dr. Lieberman assaulted Mrs. Buchanan at a bar that act would not be considered medical malpractice. The result should not be any different simply because of the locality of the act.
Buchanan, 526 So.2d at 972.
The fifth district concluded that the medical malpractice statute of limitations did not apply to the plaintiff's action against the doctor for his alleged assault or the professional association for its alleged negligence in preventing the assault.
In so concluding, the court distinguished the sexual conduct complained of in Buchanan from allegations in a California case that a physician initiated a sexual relationship with a patient during the course of treatment under the guise of legitimate medical treatment. Id. at 972-73 (citing Atienza v. Taub, 194 Cal.App.3d 388, 239 Cal.Rptr. 454 (Cal.App. 2 Dist. 1987)). In Atienza, the California Court of Appeal concluded that "a physician who induces a patient to enter into sexual relations is liable for professional negligence only if the physician engaged in the sexual conduct on the pretext that it was a necessary part of the treatment for which the patient has sought out the physician." 239 Cal.Rptr. at 457.
Because the plaintiffs in Buchanan did not allege that Mrs. Buchanan's doctor committed the sexual acts on the pretext of medical diagnosis, treatment or care, or that he induced Mrs. Buchanan to engage in sexual acts with him under the guise of medical diagnosis, treatment or care, the court determined that the doctor's conduct did not constitute medical malpractice.
A similar holding in a different context was reached by the third district in Lindheimer v. St. Paul Fire and Marine Insurance Co., 643 So.2d 636, 638-39 (Fla. 3d DCA 1994). There, the court had to decide whether a dentists sexual assault on a patient came within the professional services coverage of his professional liability insurance policy. The court held that the dentists sexual assault was not causally connected to the provision of professional services, regardless of the pretense of medical care used by the insured to catch his victim unaware. Id. (quoting New Mexico Physicians Mut. Liab. Co. v. LaMure, *340 116 N.M. 92, 860 P.2d 734, 738 (1993)). The court held that when the dentist stopped providing dental treatment to the victim and began sexually assaulting her, his professional services ended. Lindheimer, 643 So.2d at 639.
In this case, as in Buchanan, the complaint makes no mention of any pretense of medical care by the doctor or any psychological manipulation or seduction of the plaintiff. The plaintiff does not allege that Dr. Snyder engaged in sexual conduct under the guise of medical diagnosis, treatment or care. She does not allege that she was induced to have sexual relations with Dr. Snyder in furtherance of medical diagnosis, treatment, or care. On the contrary, she alleges that the sexual assault occurred "suddenly and unexpectedly" within minutes after the start of her first office visit with Dr. Snyder.
As mentioned above, we held in O'Shea that the nature of the underlying conduct determines whether the health care facility's liability under Fla. Stat. 766.110 should be considered medical negligence liability. If, in deciding O'Shea, we had followed the fifth district's position in Buchanan (that a sexual battery by a doctor that is not committed in furtherance of medical diagnosis or treatment is not considered "medical malpractice"), the outcome in O'Shea would have been different. We would not have construed the O'Sheas' allegations of sexual assault by the neurologist as a claim "arising out of the rendering of ... medical care or services." Consequently, we would not have affirmed the dismissal of the negligent supervision/retention action against the health care clinic based on noncompliance with the presuit requirements of Chapter 766 or expiration of the limitations period for medical malpractice claims.
Although the plaintiff in this case does not specifically allege Nova's liability under Fla. Stat. § 766.110, her allegations of negligent supervision and retention bring this statute into play. The trial court was thus compelled to dismiss the complaint against Nova based on our holding in O'Shea.
However, we now revisit O'Shea. We adopt Buchanan's position that a claim of sexual misconduct by a doctor during a medical examination or procedure is not a claim "arising out of the rendering of ... medical care or services." Accordingly, we recede from our holding in O'Shea that presuit requirements apply to a claim that a health care facility negligently supervised or retained an employee who sexually assaulted a patient.
We distinguish this case from St. Anthony's Hospital, Inc. v. Lewis, 652 So.2d 386 (Fla. 2nd DCA 1995), wherein the second district held that the plaintiff's negligent selection and retention claim against the hospital was barred by the two-year statute of limitations applicable to medical malpractice actions. There, the underlying conduct complained of was actually medical in nature. The plaintiff had alleged that the physician negligently performed spinal surgery that left her debilitated. The second district held that the negligent selection and retention claim against the hospital was barred by the two-year statute of limitations because it arose under the medical malpractice statute. It reasoned that the negligent medical treatment "is both necessary to the claims against the hospital and inextricably connected to them," citing Martinez v. Lifemark Hospital of Florida, Inc., 608 So.2d 855 (Fla. 3rd DCA 1992).
Martinez also involved a claim of medical malpractice. In that case, the patient and his wife brought a medical malpractice action against the doctors who performed knee surgery on the husband. The plaintiffs *341 later amended their complaint to add claims against the hospital for negligent hiring and retention of the doctors. The third district upheld the trial court's dismissal of the claims against the hospital, holding that they were barred by the two-year medical malpractice statute of limitations. The court determined that the medical malpractice statute applied because the claim arose out of negligent medical treatment. The court explained:
The appellants' entire case arises out of negligent medical treatment. Such negligent treatment is both necessary to the claims against the appellee and inextricably connected to them. Therefore, this entire case should be handled under the medical malpractice statute.
Id. at 857.
As we explained above, the claim of sexual misconduct in this case is not a claim arising out of negligent medical treatment (malpractice). Therefore, the presuit requirements and two-year statute of limitations of the medical malpractice statute do not apply to appellant's claim against Nova for negligently hiring, supervising, or retaining Dr. Snyder. We reverse the trial court's dismissal of the complaint against Nova and remand this cause for further proceedings.
REVERSED and REMANDED.
FARMER, C.J., GUNTHER, STONE, WARNER, POLEN, KLEIN, STEVENSON, SHAHOOD, and HAZOURI, JJ., concur.
GROSS, J., concurs specially with opinion, in which FARMER, C.J., concurs.
MAY, J., recused.
GROSS, J., concurring specially.
Even though I was the author of O'Shea v. Phillips, 746 So.2d 1105 (Fla. 4th DCA 1999), I concur in this opinion receding from it. In so doing, I recall the words of Baron Bramwell, who explained his change of heart in an 1872 case by saying: "The matter does not appear to me now as it appears to have appeared to me then." Andrews v. Styrop, 26 L.T.R. 704, 706 (1872).
Contrary to the majority, I do not rely on Buchanan v. Lieberman, 526 So.2d 969 (Fla. 5th DCA 1988). Buchanan construed the statute of limitations, section 95.11(4)(b), Florida Statutes (1981); O'Shea interpreted Chapter 766, Florida Statutes (1997). Reading O'Shea in 2004, I conclude that the case imposes a strained interpretation on the statutory language and implements bad policy.
To answer the contention that we trample on stare decisis, I invoke the words of Justice Frankfurter, who, when confronted with a similar situation, stated: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting). And as Justice Jackson once observed, "If there are other ways of gracefully and good naturedly surrendering former views to a better considered position, I invoke them all." McGrath v. Kristensen, 340 U.S. 162, 178, 71 S.Ct. 224, 95 L.Ed. 173 (1950) (Jackson, J., concurring).