625 S.E.2d 326

**Vicky Lynn GRAY, Plaintiff Below, Appellant,**

v.

**Ashraf MENA Kamel Mena, M.D., Princeton Endocrinology, P.L.L.C., and Princeton Community Hospital Association, Inc., D/B/A Princeton Community Hospital, Defendants Below, Appellees.**

**No. 32507.**

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 5, 2005.

Filed: Nov. 30, 2005.

---

Thomas R. Patterson, Beckley, for the Appellant.

Paul K. Reese, Heather D. Foster, Bailey & Wyant, P.L.L.C., Charleston, for the Appellees, Ashraf Mena Kamel Mena, M.D., and Princeton Endocrinology.

W.E. Sam Fox, II, Alaina N. Stout, Flaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, for the Appellee, Princeton Community Hospital Association, Inc., d/b/a Princeton Community Hospital.

Chief Justice ALBRIGHT delivered the Opinion of the Court.

Justices DAVIS and MAYNARD concur and reserve the right to file concurring opinions.

ALBRIGHT, Chief Justice.

This is an appeal by Ms. Vicky Lynn Gray (hereinafter "Appellant") from the Circuit Court of Mercer County's dismissal of the Appellant's civil action[1] alleging that a physi-

1. The Appellant's civil action included Dr. Mena, Princeton Endocrinology, and Princeton Com- munity Hospital as defendants.

cian, Ashraf Mena, M.D., physically assaulted her. The lower court dismissed the civil action based upon its finding that the Appellant failed to follow the pre-suit requirements of the West Virginia Medical Professional Liability Act. In response, the Appellant contends that she is not required to adhere to those prerequisites because this is not a medical malpractice action; rather, she characterizes it as a civil action for assault. Based upon this Court's review of the record, arguments of counsel, and applicable precedent, we reverse the determination of the lower court and remand this matter to the lower court for reinstatement of the Appellant's civil action.

### I. Factual and Procedural History

In November 2001, the Appellant was admitted to Princeton Community Hospital with swelling in her lower extremities, abdominal pain, high blood sugar, a hormone deficiency, and Addison's disease.[2] The Appellant alleges that the defendant, Dr. Mena, examined her in a hospital room behind a closed curtain in the absence of a nurse or other staff member. The Appellant further alleges that Dr. Mena, without her consent, moved her underclothing and inserted his non-gloved finger into her vagina during the examination. The Appellant contends that this procedure was not medically necessary and constituted an assault and battery. In her November 21, 2003, complaint, the Appellant, asserting that the offensive action was in the nature of a battery or sexual assault,[3] did not follow the pre-suit requirements of the Medical Professional Liability Act. *See* W.Va.Code § 55–7B–6(b) (2000) (Supp.2005).[4]

On May 12, 2004, the lower court granted the defendants' motions to dismiss, sustaining the defendants' contention that the suit was subject to the requirements of the Medical Professional Liability Act. On appeal, the Appellant maintains that her failure to follow the prerequisites of the Act should not have resulted in dismissal of her civil action.

### II. Standard of Review

In syllabus point two of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), this Court held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." *See also Richardson v. Kennedy*, 197 W.Va. 326, 331, 475 S.E.2d 418, 423 (1996). With specific regard to interpretations of statute, this Court stated as follows in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), as follows: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Utilizing the *de novo* standard of review, we proceed to an analysis of the issues presented in this appeal.

---

**2.** Addison's disease is an endocrine or hormonal disorder.

**3.** In her complaint, the Appellant alleged assault and battery, sexual assault and/or sexual abuse, outrage, intentional infliction of emotional and mental distress, and/or negligent infliction of emotional or mental distress.

**4.** West Virginia Code 55–7B–6(b) provides in pertinent part, as follows:

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

## III. Discussion

Pursuant to the definitions articulated by the West Virginia Legislature in the Medical Professional Liability Act, the Act applies only to "medical professional liability actions," and the legislature has provided the following definition of that phrase in West Virginia Code § 55–7B–2(i) (2003) (Supp. 2005): [5]

(i) "Medical professional liability" means any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient.

■ In this Court's analysis of the Act, we have acknowledged the limitation provided by that precise definition of medical professional liability and have explained as follows at syllabus point three of *Boggs v. Camden–Clark Memorial Hospital Corp.*, 216 W.Va. 656, 609 S.E.2d 917 (2004):

The West Virginia Medical Professional Liability Act, codified at W. Va.Code § 55–7B–1 *et seq.*, applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability.

■ In *Boggs*, the plaintiff had combined a claim for medical malpractice with claims of fraud, destruction of records, the tort of outrage, and spoliation of evidence. Based upon failure to give timely notice on the malpractice claims, the trial court dismissed all claims and refused to allow the plaintiff to amend the complaint. In reviewing the trial court's action, this Court explained in *Boggs*

that the special protection granted to health care professionals does not extend to all acts committed by those individuals.

Fraud, spoliation of evidence, or negligent hiring are no more related to "medical professional liability" or "health care services" than battery, larceny, or libel. There is simply no way to apply the MPLA to such claims. The Legislature has granted special protection to medical professionals, while they are acting as such. This protection does not extend to intentional torts or acts outside the scope of "health care services." If for some reason a doctor or nurse intentionally assaulted a patient, stole their possessions, or defamed them, such actions would not require application of the MPLA any more than if the doctor or nurse committed such acts outside of the health care context.

*Boggs*, 216 W.Va. at 663, 609 S.E.2d at 923–24. In reviewing the rationale utilized in *Boggs*, we note an inconsistency and seek to remedy that inconsistency in the present opinion. In *Boggs*, as quoted immediately above, this Court stated that the Act's protection does not extend to intentional torts; yet the Act itself states that it applies to "any tort," thus encompassing intentional torts. *See* West Virginia Code § 55–7B–2(i).[6] The current case illuminates the deficiency in the *Boggs* statement regarding intentional torts. We recognize that in the case sub judice, a good faith argument may be made that a claim of assault and battery is clearly a claim of an intentional tort which did not involve health care services rendered or which should have been rendered. Similarly, we recognize that a good faith argument may be made that because the alleged assault and battery occurred in the course of an ostensible medical examination, the Appellant's claim is subject to the pre-suit requirements at issue.[7] Having examined this matter in the context of the present case, we clarify

5. That definition of "medical professional liability" was formerly codified at West Virginia Code § 55–7B–2(d) (1986) (Repl.Vol.2000).

6. We also note that many medical malpractice claims are premised upon the contention that a battery had been committed.

7. *Boggs* is of limited assistance in formulating a resolution of the present case since the fraud,

destruction of records, and spoliation of evidence claims did not arise within the course of an actual physical examination. In the present case, it is the action of the physician in the context of an ostensible examination that is at issue.

*Boggs* by recognizing that the West Virginia Legislature's definition of medical professional liability, found in West Virginia Code § 55–7B–2(i), includes liability for damages resulting from the death or injury of a person for *any* tort based upon health care services rendered or which should have been rendered. To the extent that *Boggs* suggested otherwise, it is modified.

This Court also addressed the notice requirements of the Act in *Hinchman v. Gillette*, 217 W.Va. 378, 618 S.E.2d 387 (2005). The Court explained that in reviewing a claim of insufficiency in notice in a situation of this nature, "a principal consideration . . . should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes." 217 W.Va. at 386, 618 S.E.2d at 395. The *Hinchman* Court was careful to articulate that "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." *Id.* at 379, 618 S.E.2d at 388, syl. pt. 2, in part. Characterizing dismissal as a draconian remedy, the *Hinchman* Court also emphasized that the purpose of statutes impacting rights of litigants is not to create some breed of gamesmanship. 217 W.Va. at 385, 618 S.E.2d at 394.[8]

The *Hinchman* Court ultimately interpreted the Act liberally, permitting a litigant to proceed to adjudication on the merits and concluding as follows at syllabus point four:

> Under *W.Va.Code*, 55–7B–6 [2003], when a healthcare provider receives a pre-suit notice of claim and screening certificate of merit that the healthcare provider believes to be legally defective or insufficient, the healthcare provider may reply within thirty days of the receipt of the notice and certificate with a written request to the claimant for a more definite statement of the notice of claim and screening certificate of merit. The request for a more

definite statement must identify with particularity each alleged insufficiency or defect in the notice and certificate and all specific details requested by the defendant. A claimant must be given a reasonable period of time, not to exceed thirty days, to reply to a healthcare provider's request for a more definite statement, and all applicable periods of limitation shall be extended to include such periods of time.

217 W.Va. at 380, 618 S.E.2d at 389.

This Court also acknowledged in *Hinchman* that the statute in question is new and has not been subjected to extensive judicial analysis. 217 W.Va. at 384, 618 S.E.2d at 393. In that vein, this Court recognized that "a similar statute for medical malpractice claims has been in effect in Florida for some time." *Id.* Thus, this Court noted that "[t]he Florida courts have addressed a number of issues arising under their statute, and their analyses are instructive and persuasive." *Id.*

Florida has encountered a case similar to the case sub judice. In *Burke v. Snyder*, 899 So.2d 336 (Fla.App.2005), a plaintiff alleging sexual assault by a health care provider did not comply with the statutory notice and pre-suit screening requirements for medical malpractice actions. The defendant therefore moved to dismiss the complaint. In response, the plaintiff contended that her claims were not premised upon acts arising from the rendering of medical care; thus, as in the present case, the plaintiff contended that she was not required to adhere to statutory pre-suit requirements. *Id.* at 337. The trial court agreed with the contentions of the defendant and dismissed the action. On appeal, the Florida court receded from a 1999 holding, in *O'Shea v. Phillips*, 746 So.2d 1105 (Fla.App.1999), that the pre-suit requirements did apply to a claim of sexual assault by a health care provider. Instead, the *Burke* court found that the claim of sexual misconduct, under the particular facts existing in *Burke*, was not a claim arising out of negligent medical treatment. Thus, the *Burke* court held that the statutory pre-suit

---

8. As this Court explained in *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), "to the extent possible, under modern concepts of jurisprudence, legal contests should be devoid of those sporting characteristics which gave law the quality of a game of forfeits or trial by ambush." 156 W.Va. at 875, 199 S.E.2d at 58.

requirements did not apply to the plaintiff's claim. *Burke*, 899 So.2d at 341.

A principal component of *Burke* is the recognition that the particular facts alleged by a plaintiff will impact the applicability of the statute. For instance, where the allegedly offensive action was committed within the context of the rendering of medical services, the statute applies. Where, however, the action in question was outside the realm of the provision of medical services, the statute does not apply. In *Buchanan v. Lieberman*, 526 So.2d 969 (Fla.App.1988), a patient alleged that her doctor committed a battery upon her during an office visit by fondling her breasts for purposes of sexual gratification and forcibly kissing her. The reviewing court held that the particular conduct alleged in that case did not involve the provision of medical services. It was simply a battery, rather than arising from any medical diagnosis or treatment. The court reasoned as follows:

> The battery only remotely arose from a doctor-patient relationship, that is, the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctor's office. Had Dr. Lieberman assaulted Mrs. Buchanan at a bar, that act would not be considered "medical malpractice." The result should not be any different simply because of the locality of the act.

526 So.2d at 972. Both *Burke* and *Buchanan* turn upon the fact that the "complaint makes no mention of any pretense of medical care by the doctor...." *Burke*, 899 So.2d at 340. "The plaintiff does not allege that Dr. Snyder engaged in sexual conduct under the guise of medical diagnosis, treatment or care." *Id.*

Conversely, in the present case, while the Appellant characterizes the event as not affiliated in any manner with the provision of medical services, the defendant, should this case proceed to trial, would most certainly argue that his actions were necessary to a complete diagnosis and investigation of the complaints presented to him by the Appellant. The resolution of this matter of whether the allegedly offensive action occurred within the context of rendering medical services is exceedingly fact-driven. We caution all litigants preparing a complaint in such matters to be diligent in adhering to the requirements of the Medical Professional Liability Act where the healthcare provider's action could possibly be construed as having occurred within the context of the rendering of health care services.

 However, in the present case, the plaintiff filed the civil action and did not characterize the action as one falling within the realm of the Medical Professional Liability Act. Thus, under the particular circumstances of this case, dismissal appears to be a disproportionately harsh sanction. Given the newness of the statute and the approach taken by the Florida courts, as reviewed above, we do not believe that the Appellant's case should have been dismissed. We find that the Appellant and her counsel, in good faith, made a legitimate judgment that this case should be framed as an assault and battery civil action, rather than a medical malpractice action. The Appellant therefore filed her civil action without adherence to West Virginia Code § 55–7B–6. In this situation, the defendants should be permitted to request compliance with the statutory requirements. The lower court should thereafter examine the issues raised by the defendants and require the Appellant to comply with the statute. The statute of limitations for bringing an action under West Virginia Code § 55–7B–6 should be tolled during this court assessment, and the Appellant should be provided with an additional thirty days after the court decision to comply with the provisions of the statute.

 This resolution conforms to the principles underlying this Court's determinations in *Hinchman* and *Boggs* that the medical malpractice statute should not be unnecessarily utilized as an instrument to prevent adjudication on the merits. As this Court stated in syllabus point two of *McDaniel v. Romano*, 155 W.Va. 875, 190 S.E.2d 8 (1972), "[a]lthough courts should not set aside default judgments or dismissals without good cause, it is the policy of the law to favor the trial of all cases on their merits." This Court also expressed this principle in *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339

(1996), wherein we stated: "[W]e recognize that dismissal based on procedural grounds is a severe sanction which runs counter to the general objective of disposing cases on the merit." 198 W.Va. at 45–46, 479 S.E.2d at 344–45.

Again, we emphasize that while we would strongly encourage litigants to err on the side of caution by complying with the requirements of the Act if any doubt exists, we cannot favor dismissal of this particular civil action where adjustments can readily by made to permit adjudication on the merits. We cannot, however, assure future litigants who fail to comply with the requirements of the Act that dismissal can be avoided. As quoted above, this Court in *Hinchman* stated that "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." 217 W.Va. at 379, 618 S.E.2d at 388, syl. pt. 2.

Based upon the foregoing analysis, this Court reverses the determination of the lower court and remands this matter to the lower court for reinstatement of the Appellant's civil action and additional action in compliance with this Court's decision. This Court expresses no opinion as to the merits of any of the Appellant's claims.

Reversed and Remanded.

DAVIS, J., concurring.

I fully concur with the majority's Opinion in this case. Nevertheless, I feel compelled to write separately to clarify the intent and meaning of the Court's prior opinion in *Boggs v. Camden–Clark Memorial Hospital Corp.*, 216 W.Va. 656, 609 S.E.2d 917 (2004), upon which opinion the Court relies in rendering its decision in the case *sub judice*.

In new Syllabus point 4 of the majority's opinion, the Court held that

[t]his Court's opinion in *Boggs v. Camden–Clark Memorial Hospital Corp.*, 216 W.Va. 656, 609 S.E.2d 917 (2004), is clarified by recognizing that the West Virginia Legislature's definition of medical professional liability, found in West Virginia Code § 55–7B–2(i) (2003) (Supp.2005), includes liability for damages resulting from the death or injury of a person for *any* tort based upon health care services rendered or which should have been rendered. To the extent that *Boggs* suggested otherwise, it is modified.

Despite the majority's assertion and ultimate conclusion that our prior opinion in *Boggs* is unclear and in need of clarification, I do not share this assessment of *Boggs*. Rather, I think the dicta language relied upon by the majority in reaching this determination speaks for itself:

Fraud, spoliation of evidence, or negligent hiring are no more related to "medical professional liability" or "health care services" than battery, larceny, or libel. There is simply no way to apply the MPLA to such claims. The Legislature has granted special protection to medical professionals, while they are acting as such. *This protection does not extend to intentional torts or acts outside the scope of "health care services."* If for some reason a doctor or nurse intentionally assaulted a patient, stole their possessions, or defamed them, such actions would not require application of the MPLA any more than if the doctor or nurse committed such acts outside of the health care context.

*Boggs,* 216 W.Va. at 662, 609 S.E.2d at 923–24 (emphasis added).

The difficulty apparently arises with the phrase "intentional torts or acts." In its analysis of this language, the majority suggests that the reference to "intentional torts" implies that *Boggs'* interpretation of the MPLA was that it did not apply to intentional torts despite the MPLA's express language stating that it applies to "any tort." *See* W. Va.Code § 55–7B–2(i) (2003) (Supp. 2005). Reading the entire sentence from *Boggs* containing this phrase, however, demonstrates that such was not the construction intended by the *Boggs* Court.

In full, the relevant sentence provides: "This protection does not extend to intentional torts or acts outside the scope of 'health care services.'" *Boggs,* 216 W.Va. at 663, 609 S.E.2d at 924. From this language, it is clear that *Boggs* did not exclude intentional torts from the protections of the MPLA. The

phrase "intentional torts" is modified by the phrase "outside the scope of 'health care services'". *Id.* Thus, it is clear that the only type of intentional torts the *Boggs* Court found to be outside the rubric of the MPLA were those intentional torts that do not pertain to the rendering of "health care services".

Arguably, the language relied upon by the majority could have been more artfully stated by the *Boggs* Court, but, be that as it may, it is not so lacking as to warrant the creation of a new syllabus point to clarify that which is not facially unclear.

For the foregoing reasons, I respectfully concur with the Opinion of the Court. I am authorized to state that Justice Maynard joins me in this concurring opinion.