No. 21-0230—*State ex rel. WVU Hospitals v. Scott*

WOOTON, J., concurring, in part, and dissenting, in part:

I concur in the majority's conclusion that the amended allegations herein involving petitioner WVU Hospitals' failure to purchase air filters for its equipment sufficiently meets the definitions of "health care" and "medical professional liability" such that the claim falls within the confines of the Medical Professional Liability Act ("MPLA"). *See generally* W. Va. Code § 55-7B-1 to -12 (2016 & Supp. 2021). I agree that the writ should be granted to that extent, resulting in dismissal of that claim for failure to provide a screening certificate of merit. However, the remaining amended allegations— failure to properly document the cause of death, failure to report a sentinel event, and spoliation—on their face allege "after-the-fact" corporate wrongdoing which do not constitute contemporaneous or related claims arising "in the context of rendering health care services," as defined in the MPLA. To reach a contrary result, the majority fails entirely to construe these allegations in the light most favorable to respondents, violating our most fundamental principle in assessing a complaint, and improvidently grants extraordinary relief where factual issues predominate. Accordingly, I would permit those claims to proceed and dissent to the grant of extraordinary relief to that extent.

In its haste to justify the dismissal of the amended claims at issue, the majority almost immediately and profoundly overlooks two dispositive standards for this

1

Court's review. First, the issue presented to this Court under its original jurisdiction is whether the circuit court committed "clear error" in failing to dismiss the subject complaint. It is axiomatic that both the circuit court and this Court are obligated to construe the complaint—*both its allegations and the inferences to be drawn therefrom*—in the light most favorable to respondents: "A court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, *and inferences arising from those facts*, in the light most favorable to the plaintiff." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020) (emphasis added). The majority fails to note this guiding principle.

Secondly, when a writ of prohibition presents a jurisdictional challenge, any fact question precludes issuance of the writ—a principle the majority acknowledges, then hastily disregards: "'If [the jurisdictional question] rests upon a determination of fact, prohibition will not lie.'" *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 341, 835 S.E.2d 579, 585 (2019) (quoting *Lewis v. Fisher*, 114 W. Va. 151, 154-155, 171 S.E. 106, 107 (1933) (footnote omitted)). Instead of construing the amended allegations and their inferences in the light most favorable to respondents and affirming the circuit court's inclination to permit additional discovery before ruling on the issue, the majority picks apart the threads of respondents' bare allegations in an effort to tie them to vague notions of "health care."

2

The majority opinion concedes that respondents' allegations "[a]t first glance . . . are not grounded in medical negligence." This telling statement alone violates our standard of review as to the sufficiency of a complaint, which must be construed in the manner which most favors respondents. Undeterred, however, the majority launches into a lengthy dissection of the allegations in an attempt to characterize *post-discharge* allegations of wrongdoing—all designed to disguise the alleged underlying malpractice— as inherently part of a patient's care and treatment and/or simple medical negligence.

The majority's analysis focuses on the Legislature's 2015 amendment to West Virginia Code § 55-7B-2(i), which clarified that "[m]edical professional liability" includes "other claims that may be contemporaneous to or related to the alleged tort or breach of contract otherwise provided, all in the context of rendering health care services." Conceding that even "contemporaneous to or related to" claims must remain inherently "health care"-related to be covered by the MPLA, the majority scarcely dignifies the statutory definition provided by the Legislature as to what "health care" entails. Instead, it summarily dubs the allegations as undertaken "in the context of health care" because they "arise[] from and [are] factually related to" the underlying malpractice. However, the phrase "in the context of health care" is not open to the majority's interpretation; the Legislature has provided a precise statutory definition of "health care" against which the allegations must be measured.

3

West Virginia Code § 55-7B-2(e)(1) defines "[h]ealth care," in part, as "[a]ny act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's *plan of care, medical diagnosis or treatment*." (emphasis added).[1] This definition, along with proper construction of the allegations and inferences in respondents' favor, must guide the analysis. However, the majority does precisely the opposite; it cherry-picks words from respondents' amended complaint and misconstrues the gist of the allegations. More importantly, it then fails to dignify, much less apply, the statutory definition of "health care" to determine whether the allegations were undertaken in that "context." Instead, the majority attempts to rationalize its conclusion by explaining how these allegations "implicate" health care—*not* as defined by statute, but in the *"traditional sense of the word[.]"*

First, the majority characterizes respondents' claim that petitioner failed to document the respondent infant's cause of injury in the discharge summary as mere

---

[1] West Virginia Code § 55-7B-2(e)(2) further defines "health care" as including

> [a]ny act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport, custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services[.]

None of these more specifically delineated health care services appear to be at issue herein, nor does the majority rely on this provision in resolving the case at bar.

medical record documentation, which is "used in addressing further needs of the patient, and in developing a treatment plan." Certainly, routine medical documentation or lack thereof could relate to a health care provider's "plan of care, medical diagnosis or treatment." However, what is pled here are allegations of "misrepresent[ation]" and "[f]ailure to include . . . the iatrogenic 'never event'[2] in a discharge summary" for the purpose of avoiding negative effect on regulatory status for financial purposes. (Footnote added). The majority fails to explain how a purposeful, material omission in a discharge summary is done in the context of an individual patient's "plan of care, medical diagnosis or treatment."

Next, the majority continues its endeavor to repackage respondents' allegations as routine medical service and decision-making by simply declaring that petitioner's failure to report the sentinel event "is 'in the context of rendering health care.'" Not only does the majority again fail to revisit the statutory definition of "health care" contained in West Virginia Code § 55-7B-2(e) to determine whether this act was undertaken in that context, it dedicates but this single, conclusory phrase to this allegation.

Finally, sensing the culminating tension in characterizing respondent's coverup allegations as anything remotely approximating a "plan of care, medical diagnosis or treatment," the majority seemingly dispenses with the "smoking gun" spoliation claim

---

[2] "Never events are errors that should not ever have happened." https://www.ncbi.nlm.nih.gov/books/NBK499956 (last visited Nov. 15, 2021).

by presuming that the claim sounds purely in negligence and is therefore not viable under West Virginia law. This rationale not only profoundly fails to construe the complaint in the light most favorable to respondents, but does so to obscure the majority's reluctance to affirmatively state that an intentional spoliation claim, by its very nature, presumptively falls outside of the MPLA. This rather obvious conclusion was already made by this Court seventeen years ago. *See Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 216 W. Va. 656, 662-63, 609 S.E.2d 917, 923-24 (2004), *superseded by statute,* W. Va. Code § 55-7B-2(i) (2015) ("Fraud[] [and] spoliation of evidence . . . are no more *related to* 'medical professional liability' or 'health care services' than battery, larceny, or libel. . . . Th[e] [MPLA's] protection does not extend to intentional torts or acts outside the scope of "health care services."" (emphasis added)).[3]

Despite vague references to health care providers who "act[] as such" and those who act as "conspirators," the majority avoids the MPLA analysis altogether by stating that 1) West Virginia does not recognize a standalone tort for negligent spoliation against a party-litigant; and 2) respondents failed to specifically allege intentional spoliation. Assuming for a moment that a such a distinction has any basis in the MPLA's definitions, respondents plainly allege that petitioner "committed spoliation of the peripheral line tubing . . . which resulted in the air embolism" despite petitioner's reporting

---

[3] The majority suggests that this statement (which it does not quote or acknowledge) has lost its vitality since a syllabus point in *Boggs* has been abrogated by statute. That syllabus point, however, has nothing whatsoever to do with this common-sense statement, which the majority intentionally avoids revisiting.

program requiring labeling and maintenance of the tubing.[4]  Similarly, with regard to the failure to report a sentinel event, the amended complaint alleges that petitioner "failed to report" the event to regulatory bodies.  Neither claim expressly states whether these acts were negligent or intentional, but the reasoning alleged for the actions—to avoid regulatory and financial consequences—most certainly smack of intentional misconduct.  Negligent acts, by their nature, are not done for a particular purpose.[5]

Distilled to their essence, and using the express wording from the amended complaint, respondents allege that petitioner "misrepresented" the cause of the infant respondent's cardiac arrest and injuries to omit the alleged malpractice, then spoliated the physical evidence of the malpractice, and finally failed to report the malpractice to regulatory bodies.  Respondents specifically allege that these actions were undertaken to "reduce[] the likelihood of regulatory investigations[] [and] remedial requirements" and avoid negative impact on the "regulatory status of the hospital; possible financials and

---

[4] The amended complaint further alleges that petitioner "failed to properly train" its providers regarding this policy.  However, by no means does this training failure foreclose the possibility that the spoliation was nonetheless intentional—both things can be true and may certainly be pled in the alternative.

[5] The majority appears to rely heavily on the caption of "corporate negligence" to presume that all of the various claims sound in negligence, without examination of the specific allegations.  Again, this construction flies directly in the face of our long-standing edict that all allegations must be construed in respondents' favor.

fundraising, including reimbursements of hospital charges[] [and] liability costs"—*all* of which clearly suggest intentional misconduct.

Again, assuming that the spoliation allegations must be pled as intentional to evade the MPLA and that the complaint herein somehow fails to do so, the majority further fails to entertain the notion that more particular evidence of intentional misconduct may well be unearthed in discovery. Whether further evidence of intentional motivation is revealed in discovery is precisely the type of *factual development* which precludes extraordinary relief. *See State ex rel. PrimeCare*, 242 W. Va. at 341, 835 S.E.2d at 585 (quoting *Lewis*, 114 W. Va. at 155, 171 S.E. at 107) ("'If [the jurisdictional question] rests upon a determination of fact, prohibition will not lie.'"). Our precedent makes clear that factual development is necessary to determine whether the MPLA applies and extraordinary relief prematurely dismissing claims before permitting discovery has no basis in our law. *See* Syl. Pt. 3, *Manor Care, Inc. v. Douglas,* 234 W. Va. 57, 763 S.E.2d 73 (2014) ("While the applicability of the Medical Professional Liability Act, W. Va. Code § 55–7B–1 *et seq*., is based upon the facts of a given case, the determination of whether a particular cause of action is governed by the Act is a legal question to be decided by the trial court."); *Blankenship v. Ethicon, Inc*., 221 W. Va. 700, 706, 656 S.E.2d 451, 457 (2007) ("[T]he determination of whether the Medical Professional Liability Act, W. Va. Code § 55–7B–1 *et seq*., applies to certain claims is a fact-driven question." (footnote omitted)); *Gray v. Mena*, 218 W. Va. 564, 570, 625 S.E.2d 326, 332 (2005) ("[T]he particular facts alleged by a plaintiff will impact the applicability of the statute.").

8

Accordingly, the circuit court's conclusion that discovery should ensue to further elucidate these claims was entirely prudent and correct under our existing law. To whatever extent the majority finds the allegations insufficiently accusatory, this does not foreclose the possibility that discovery will reveal precisely the type of conduct which would satisfy it. West Virginia is a notice pleading state; petitioner is undoubtedly on full notice of the facts and claims respondents intend to assert, pending further development. This Court recently reminded that

> Rule 15(b) makes clear that pleadings may be amended not only as late as trial, but "even after judgment" "to cause them to conform to the evidence[.]" Rule 15(b) further permits parties to examine at trial "issues not raised by the pleadings" and treat those issues "in all respects as if they had been raised in the pleadings," if the parties give express or implied consent. Overall, the Rules require that the "final judgment" in every case (except one by default) "shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings*." Rule 54(c) (emphasis added).
>
> Taken as a whole, the West Virginia Rules of Civil Procedure establish the principle that a plaintiff pleading a claim for relief need only give general notice as to the nature of his or her claim.

*Mountaineer Fire & Rescue Equip*, 244 W. Va. at 521, 854 S.E.2d at 883 (footnote omitted). There is simply no reason this entire exercise cannot be revisited upon further development of the facts, which would provide both the lower court, and potentially this Court, a full record upon which to make a more reasoned assessment. This exercise belongs, in the first instance, with the circuit court:

9

> [T]he existence or nonexistence of facts conferring jurisdiction is for the decision of the court in which the proceeding is pending. The right of the trial court to determine the existence or nonexistence of facts that give rise to its own jurisdiction will not be interfered with by any other court, and the sole remedy is by appeal[.]

*Lewis*, 114 W. Va. at 154, 171 S.E. at 107.

It would be a rare case which is brought against a health care provider which cannot in some way be connected to the health care services it provides. Our determination as to whether the MPLA applies requires more than a trail of breadcrumbs to some semblance of health care service. The failure to document/report and spoliation claims constitute malfeasance which is not peculiar to health care providers; this type of wrongdoing fails to implicate the provision of "health care" in any way. Claims of this type were not the genesis of the MPLA's remedial efforts and are undeserving of the special protections the MPLA affords. The MPLA was not intended to provide a blanket of institutional protection to health care providers for any manner of wrongdoing insofar as it was otherwise regularly engaged in the business of health care.

Therefore, while I concur in the conclusion that the failure to equip claim falls within the MPLA, I respectfully dissent to the majority's assessment that the remaining claims of spoliation and failure to document/report are governed by the MPLA.