IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

**FILED**

**May 29, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 25-145

STATE OF WEST VIRGINIA EX REL. WEST VIRGINIA UNIVERSITY
HOSPITALS, INC. d/b/a J.W. RUBY MEMORIAL HOSPITAL,
Petitioner,

v.

THE HONORABLE MICHAEL D. SIMMS, Judge of the Circuit Court of Monongalia
County, West Virginia and CODY MORTON AND BROOKE MORTON, individually
and as administrators of the ESTATE OF BRODY WILLIAM MORTON
Respondents.

PETITION FOR A WRIT OF PROHIBITION

WRIT DENIED

Submitted: April 22, 2026
Filed: May 29, 2026

Patrick S. Casey, Esq.
Sandra M. Chapman, Esq.
Ryan P. Orth, Esq.
Liam C. Casey, Esq.
Casey and Chapman, PLLC
Wheeling, West Virginia

Christine S. Vaglienti, Esq.
West Virginia United Health System, Inc.
Legal Services
Morgantown, West Virginia

Counsel for Petitioner West Virginia University
Hospitals, Inc. d/b/a J.W. Ruby Memorial Hospital

Robert F. Daley, Esq.
Elizabeth A. Chiappetta, Esq.
Katelyn D. Edwards, Esq.
Robert Peirce & Associates PC
Pittsburgh, Pennsylvania

Counsel for Respondents Cody
Morton and Brooke Morton,
individually and as
administrators of the Estate of
Brody William Morton

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1.      "Prohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3. "The pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." Syllabus Point 2, *State ex rel. PrimeCare Medical of West Virginia. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).

4. "Under W. Va. Code, 55-7B-6 [2003] the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." Syllabus Point 2, *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005).

5. "Before a defendant in a lawsuit against a healthcare provider can challenge the legal sufficiency of a plaintiff's pre-suit notice of claim or screening certificate of merit under W. Va. Code, 55-7B-6 [2003], the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies." Syllabus Point 3, *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005).

6. "Under W. Va. Code, 55-7B-6 [2003], when a healthcare provider receives a pre-suit notice of claim and screening certificate of merit that the healthcare

provider believes to be legally defective or insufficient, the healthcare provider may reply within thirty days of the receipt of the notice and certificate with a written request to the claimant for a more definite statement of the notice of claim and screening certificate of merit. The request for a more definite statement must identify with particularity each alleged insufficiency or defect in the notice and certificate and all specific details requested by the defendant. A claimant must be given a reasonable period of time, not to exceed thirty days, to reply to a healthcare provider's request for a more definite statement, and all applicable periods of limitation shall be extended to include such periods of time." Syllabus Point 4, *Hinchman v. Gillette*, 21 W. Va. 378, 618 S.E.2d 387 (2005).

7. "Under W. Va. Code, 55-7B-6 [2003], the making of a request for a more definite statement in response to a notice of claim and screening certificate of merit preserves a party's objections to the legal sufficiency of the notice and certificate as to all matters specifically set forth in the request; all objections to the notice or certificate's legal sufficiency not specifically set forth in the request are waived." Syllabus Point 5, *Hinchman v. Gillette*, 21 W. Va. 378, 618 S.E.2d 387 (2005).

8. "In determining whether a notice of claim and [screening] certificate [of merit] are legally sufficient, a reviewing court should apply W. Va. Code, 55-7B-6 [2003] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims. Therefore, a principal consideration before a court

reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes." Syllabus Point 6, *Hinchman v. Gillette*, 21 W. Va. 378, 618 S.E.2d 387 (2005).

**BUNN, Chief Justice:**

Petitioner West Virginia University Hospitals, Inc. ("WVUH") invokes this Court's original jurisdiction and seeks a writ to prohibit enforcement of an order of the Circuit Court of Monongalia County denying its motion to dismiss the Morton Respondents' claims against it. WVUH's motion sought dismissal of the claims for lack of subject matter jurisdiction to adjudicate the Morton Respondents' claims brought under the Medical Professional Liability Act, West Virginia Code §§ 55-7B-1 to -12 ("MPLA"). Prior to filing the complaint, the Morton Respondents provided a pre-suit notice of claim and screening certificate of merit pursuant to the MPLA but maintained that the MPLA did not apply to their claims. WVUH objected to the sufficiency of the provided notice, lodging and preserving its objections consistent with *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005). When the parties' mediation failed to result in a settlement, WVUH sought to dismiss the claims for lack of subject matter jurisdiction premised on its perceived deficiencies in the screening certificate of merit.

The circuit court denied, in part, WVUH's motion to dismiss, finding that the claims were not subject to the MPLA's notice requirements and, therefore, the sufficiency of the screening certificate of merit was moot. WVUH asserts in its petition for a writ of prohibition that the circuit court clearly erred in its determination that the MPLA did not apply to certain claims brought by the Morton Respondents, and that the court was deprived of subject matter jurisdiction based on a deficient screening certificate of merit. We

1

conclude, however, that the sufficiency of pre-suit notice is not a jurisdictional inquiry, and therefore a writ of prohibition will not issue on that basis. Accordingly, we deny the requested writ of prohibition.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On April 4, 2021, Respondent Brooke Morton presented to WVUH's labor and delivery unit to induce labor at 37 weeks gestation, which was considered necessary based on cystic fibrosis-induced diabetes. The baby, Brody Morton, was later delivered by emergency cesarean section but had no heart rate or respiratory effort and was limp. WVUH staff was successful at resuscitating Brody, after which he was transferred to the Neonatal Intensive Care Unit ("NICU"). Tragically, Brody passed away in the NICU five hours after his delivery.

Following the delivery, Mrs. Morton suffered severe hemorrhaging, had to be placed on a ventilator, and was later admitted to the Surgical Intensive Care Unit. Mr. Morton signed a consent to perform an autopsy on the infant but alleges that he was led to believe the autopsy would be performed by the West Virginia Office of the Chief Medical Examiner in Charleston, not at WVUH. He further alleges that he first learned from the funeral home that WVUH, and not the Medical Examiner, performed the autopsy, and that the infant's internal organs were not preserved, preventing an additional autopsy.

2

The Mortons sent WVUH two separate notices indicating that they intended to file claims against it, both accompanied by screening certificates of merit. One notice, sent on behalf of the Estate of Brody Morton, provided a notice of intent to file a medical professional negligence claim against WVUH for mismanagement of Mrs. Morton's labor and the timing of delivery. That notice was accompanied by two screening certificates of merit, one from an obstetrician and one from a neonatologist, both of whom criticized the delay in proceeding to a cesarean section.

The other notice of claim, sent on behalf of Mr. and Mrs. Morton, stated that they intended to file claims against WVUH for intentional and negligent infliction of emotional distress based on the destruction of the infant's internal organs after autopsy; negligent infliction of emotional distress based on the delivery; fraudulent inducement relative to the consent for an autopsy; intentional spoliation regarding the handling of the infant's internal organs; and claims associated with fabrication and alteration of medical records. That notice of claim was accompanied by a screening certificate of merit from Gerald Felty, a registered nurse. This latter notice further indicated that the Mortons did not believe the MPLA applied to the claims therein asserted, but that pre-suit notice and screening certificate of merit were provided out of an abundance of caution. The screening certificate of merit from Nurse Felty generally criticized the process by which the autopsy consent was obtained and the post-autopsy preparation for delivery to the funeral home.

WVUH responded to the notices and screening certificates of merit,

3

informing the Mortons that WVUH did not employ any physicians, attending or resident, that provided treatment to Brooke or Brody Morton and that those notices should have been directed to the West Virginia University Board of Governors ("WVUBOG"). Insofar as WVUH staff was implicated, the letter stated that the initial notice did not distinguish their conduct from that of the physicians and that WVUH needed a more definite statement of their role relative to the theories of liability, and that the letter served as notice of deficiencies consistent with *Hinchman*, 217 W. Va. 378, 618 S.E.2d 387.[1] The *Hinchman* letter raised additional deficiencies with the screening certificate of merit for failing to address the claims of spoliation or alteration of medical records. The letter requested that the deficiencies be addressed within thirty days and reserved the option to seek dismissal of any later-filed claims based on the deficiencies.

The Mortons responded to the *Hinchman* letter with a second screening certificate of merit from Michael Seaver, a registered nurse and clinical informaticist qualified in electronic medical record systems to opine as to alteration and fabrication of medical records. The response also included an amended screening certificate of merit from Nurse Felty that indicated WVUH staff had not preserved the internal organs from the

---

[1] Syllabus Point 3 of *Hinchman* provides:

Before a defendant in a lawsuit against a healthcare provider can challenge the legal sufficiency of a plaintiff's pre-suit notice of claim or screening certificate of merit under W. Va. Code, 55-7B-6 [2003], the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies.

autopsy, and that WVUH nurses had presented Mr. Morton with the autopsy paperwork at an inappropriate and traumatic time and rushed him into signing it without being afforded opportunity for explanation or to ask clarifying questions.

The Morton Respondents' complaint against both WVUH and WVUBOG included counts of intentional and negligent infliction of emotional distress on behalf of both Mr. and Mrs. Morton relating to the autopsy consent and destruction of internal organs; spoliation on behalf of both Mr. and Mrs. Morton based on destruction of internal organs and falsification or alteration of medical records; and, on behalf of the Estate of Brody Morton, fraud and misrepresentation based on grief counseling and consent process surrounding the autopsy.

The parties agreed to suspend activity in the case and mediate. The Mortons settled their claims with WVUBOG for allegations related to medical negligence of the physicians involved, but WVUH and the Mortons did not agree to a settlement. WVUH then filed a motion to dismiss, arguing that (1) the Mortons inappropriately attributed the conduct of WVUBOG physicians to WVUH staff for which it was not liable, (2) the MPLA applied to their claims against WVUH, and (3) the provided screening certificates of merit, as required by the MPLA, were deficient, depriving the circuit court of subject matter jurisdiction.

The Mortons argued that the MPLA did not apply to the claims and that

5

providing the notice of claim and screening certificate of merit was prophylactically done in anticipation of WVUH's arguments that it applied. The Mortons further contended that neither expert testimony nor specialized medical knowledge were necessary to explain the basis of WVUH's alleged liability. To the extent the court was asked to determine whether the screening certificate of merit was sufficient, the Mortons argued that dismissal of claims was, at best, premature insofar as no discovery had yet been conducted, and the experts had conducted a review of the information then available to them. WVUH responded that the MPLA has no provision permitting discovery that would "delay [] decisions upon these critical threshold issues that bear on whether this Court even has subject matter jurisdiction over the controversy."

The circuit court concluded that the MPLA did not apply to the Mortons' claims of negligent and intentional infliction of emotional distress and thus found the exercise of determining the sufficiency of the screening certificates of merit to be a moot issue.[2] WVUH filed this petition for a writ of prohibition challenging the circuit court's determination that the MPLA did not apply to those claims, contending that the court is proceeding without subject matter jurisdiction.

---

[2] The circuit court granted, in part, WVUH's motion to dismiss, dismissing the Mortons' claims of spoliation and fraud. The circuit court concluded that the MPLA applied to those claims but did not state a basis for dismissal. Those claims are not at issue in this petition for a writ of prohibition, and we do not take a position on the propriety of the dismissal.

6

## II.

### STANDARD FOR ISSUANCE OF WRIT

West Virginia Code § 53-1-1 sets forth that "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." In applying that standard, this Court has explained that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

Discerning two separate bases for issuance of a writ of prohibition—lack of jurisdiction and abuse of legitimate powers—this Court explained in *Woodall v. Laurita* that where a litigant claims only abuse of legitimate powers, a writ of prohibition will issue only at the discretion of this Court, not as of right. 156 W. Va. 707, 712, 195 S.E.2d 717, 720 (1973) ("In this case the defendant seeks to invoke prohibition on the grounds that the court has exceeded its legitimate powers, and not on the grounds of lack of jurisdiction. In this type of case the issuance of the writ is discretionary with the appellate court."). *Cf.*, *Morris v. Calhoun*, 119 W. Va. 603, 608, 195 S.E. 341, 345 (1938) ("[W]hen a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right, regardless of the existence of other remedies, and regardless of whether or not the objections to the jurisdiction of the trial court have been presented to that court prior to the

7

application for relief here.").

Discretionary issuance of extraordinary relief in prohibition was later polished into the now-familiar guiding standards from *State ex rel. Hoover v. Berger*:

> *In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers*, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (emphasis added). Bearing both standards in mind, we turn to the parties' arguments.

## III.

## DISCUSSION

WVUH asks the Court to resolve, in the first instance, the question of the MPLA's application to the claims asserted below, and in the second, to find the screening certificate of merit deficient, which it contends deprives the circuit court of subject matter

8

jurisdiction. More specifically, the parties ask us to reconcile three seemingly parallel cases to determine whether the MPLA applies to the claims here alleged: *Ricottilli v. Summersville Memorial Hospital*, 188 W. Va. 674, 425 S.E.2d 629 (1992); *State ex rel. Charleston Area Medical Center, Inc. v. Thompson*, 248 W. Va. 352, 888 S.E.2d 852 (2023); and *West Virginia Department of Health v. Cipoletti*, 250 W. Va. 1, 902 S.E.2d 133 (2024).

While the parties stress the substance of those cases in pursuit of a definitive answer to the question of the MPLA's application to these claims, we find the procedural posture more instructive. *Ricottilli* was a direct appeal from the grant of a motion to dismiss, where the MPLA's application, or not, informed whether the claim was timely. 188 W. Va. at 678, 425 S.E.2d at 633 (finding the MPLA did not apply to supply a two-year statute of limitations to negligence claim). *Cipoletti* was an interlocutory appeal of an immunity determination, involving whether the circuit court erred in determining that the MPLA applied to the claims so as to deprive the State of its immunity. 250 W. Va. at 6, 902 S.E.2d at 138. In contrast, *Thompson*, like the instant case, arose from circumstances where the defendant sought a writ of prohibition because the circuit court denied its motion to dismiss, which was premised on a lack of subject matter jurisdiction under Rule 12(b)(1) of the West Virginia Rules of Civil Procedure. 248 W. Va. at 355-56, 888 S.E.2d at 855-56. *See also* Syl. Pt. 2, *State ex rel. PrimeCare Medical of W. Va. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019) ("The pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction."). Accordingly, *Thompson* required

9

the Court to resolve the MPLA's application on a jurisdictional basis: the plaintiffs there had served neither a notice of claim nor a screening certificate of merit prior to filing the action, and the circuit court had erroneously concluded it was not required. *Thompson*, 248 W. Va. at 356-57, 888 S.E.2d at 856-57.

Similar to *Thompson*, WVUH seeks a writ prohibiting the circuit court's denial of its motion to dismiss on the basis that the circuit court lacked subject matter jurisdiction. But, of critical divergence, there is no claim here that the Mortons *failed* to serve pre-suit notice; only that the pre-suit notice the Mortons did serve—particularly, the screening certificate of merit—was deficient. Drawing a distinction between the failure to serve pre-suit notice altogether under *Faircloth* and the discretionary analysis for allegedly deficient notice under *Hinchman*, we need not weigh in on the applicability of the MPLA to conclude that the circuit court has subject matter jurisdiction to proceed because, regardless, the Mortons served pre-suit notice. As further explained below, any determination of the MPLA's application here—whether contrary or consistent with the circuit court's evaluation—does not have the consequence of depriving the circuit court of jurisdiction over the subject matter in the underlying case. Rather, if we assume the MPLA does apply, the question is merely whether the plaintiffs sufficiently complied with pre-suit notice requirements to satisfy *Hinchman*'s checks on frivolity and its assurances that the defendant has not been prejudiced by a deficient notice—a question that does not implicate subject matter jurisdiction. Accordingly, a writ will not issue on the basis that the circuit court lacks subject matter jurisdiction to proceed.

10

### *A. Jurisdictional Writ Based on Pre-Suit Notice*

Emphasizing the language of West Virginia Code § 55-7B-6 that "no person may file a medical professional liability action against any health care provider without complying with the provisions of [W. Va. Code § 55-7B-6]," this Court held in Syllabus Point 2 of *Faircloth* that, "[t]he pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." 242 W. Va. 335, 835 S.E.2d 579. Consequently, this Court has frequently issued writs of prohibition for lack of subject matter jurisdiction where a circuit court has denied a motion to dismiss when a plaintiff filed suit alleging claims falling within the MPLA without first serving a notice of claim and screening certificate of merit. *See, e.g.*, *State ex rel. Hope Clinic, PLLC v. McGraw*, 245 W. Va. 171, 178-79, 858 S.E.2d 221, 228-29 (2021) (granting writ of prohibition for lack of jurisdiction finding post-suit notice insufficient to cure failure to provide pre-suit notice); *State ex rel. West Virginia University Hospitals, Inc. v. Scott*, 246 W. Va. 184, 866 S.E.2d 350 (2021) (granting writ of prohibition for lack of jurisdiction based on failure to provide pre-suit notice of healthcare claims alleged in amended complaint); *Thompson*, 248 W. Va. 352, 888 S.E.2d 852 (granting writ of prohibition for lack of jurisdiction based on failure to provide pre-suit notice).

Two decades ago in *Gray v. Mena*, 218 W. Va. 564, 625 S.E.2d 326 (2005), this Court grappled with the then-recently adopted pre-suit notice requirements under the MPLA. More particularly—though it stopped short of deeming pre-suit notice an issue of

11

subject matter jurisdiction—the *Gray* decision examined the dire implications of the failure to provide pre-suit notice where it is later determined, either by the circuit court or an appellate court, that the notice was a necessary precursor to the suit. *Id.* at 570, 625 S.E.2d at 332. Noting the harsh reality that the MPLA may apply to claims regardless of how they may be pleaded and that such claims may be dismissed as a result,[3] the Court "strongly encourage[d] litigants to err on the side of caution by complying with the requirements of the [MPLA] if any doubt exists[.]" *Id.* at 571, 625 S.E.2d at 333.

The Mortons heeded *Gray*'s advice and exercised that caution here. They anticipated that a court may find the MPLA applied to their claims and so served WVUH with both a notice of claim and screening certificate of merit. For that reason, we do not stand in the typical position of evaluating whether there was a total *failure* to comply with the pre-suit notice requirements that would serve to deprive the circuit court of subject matter jurisdiction under more recent jurisprudence where a resultant writ would issue as of right. *See Morris*, *supra*.

Instead, we are presented with the propriety of a challenge in prohibition where the plaintiff *has* served a pre-suit notice of claim and screening certificate of merit,

---

[3] The claims in *Gray* were reinstated, but that result was novel to the circumstances of a new statute and a good faith, yet ultimately wrong conclusion that the claims asserted were not within the realm of medical professional liability. The Court took care to ensure that future litigants were on notice of the prospect that claims may be dismissed for failure to comply. *Id*. at 570-71, 625 S.E.2d at 332-33.

12

but the sufficiency of the screening certificate of merit is called into question under *Hinchman*. Evaluating whether a deficient screening certificate of merit would deprive the circuit court of subject matter jurisdiction requires, of course, that we assume without deciding that the MPLA would apply to require a screening certificate of merit in the first place. Proceeding under that assumption, we turn to this Court's jurisprudence on screening certificates of merit.

### B. Sufficiency of a Screening Certificate of Merit

*Hinchman* is the chief authority on screening certificates of merit, issuing multiple syllabus points underscoring the need to delicately balance the rights of healthcare providers to pre-suit notice so as to settle meritorious claims and to filter out frivolous claims before they may be filed. *See generally*, *Hinchman*, 217 W. Va. 378, 618 S.E.2d 387. But *Hinchman* also belabors that the pre-suit notice requirements of West Virginia Code § 55-7B-6 may not be read to "restrict or deny citizens' access to the courts." *Id.* at Syl. Pt. 2.

The facts of *Hinchman* involved the dismissal of a plaintiff's claims upon the defendant's Rule 12(b)(6) motion where the circuit court concluded that the certificate of merit was legally deficient, but those deficiencies were never posed to the plaintiff for correction prior to the lawsuit's filing and the resulting motion to dismiss. *Id.* at 385, 618 S.E.2d at 394. Observing that the MPLA was "silent as to when and how objections to the sufficiency of a notice of claim or certificate may be made" *Hinchman* likened the

13

specificity challenges to those brought in a motion for a more definite statement. *Id.* at 386, 618 S.E.2d at 395. Insofar as no court could intervene to rule on a motion for a more definite statement *pre*-suit, in order to preserve health care providers' protections under the MPLA, the Court explained that the approach needed modification:

> However, in the situation in the instant case, there would seem to be no sense or utility in allowing amendment of a pre-suit notice and certificate *after* suit is filed. For specific objections to a pre-suit notice and certificate to be made for the first time only after suit is filed is contrary to the purposes of the statute—to avert frivolous claims leading to a lawsuit and to promote the pre-suit resolution of non-frivolous claims.

*Id.* The Court thus crafted a series of syllabus points purporting to govern the gap in West Virginia Code § 55-7B-6 posed by pre-suit notice the defendant believes to be insufficient. More than twenty years after the issuance of *Hinchman*, the Legislature has not set forth a new statutory process. In the absence of legislative direction, we turn to *Hinchman* to determine whether the sufficiency of a screening certificate of merit implicates subject matter jurisdiction under West Virginia Code § 55-7B-6.

The first original syllabus point in *Hinchman* recognizes the underlying purpose of the notice requirements:

> Under W. Va. Code, 55-7B-6 [2003] the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts.

14

Syl. Pt. 2, *Hinchman.* The second and third original syllabus points provide that a health

care provider may challenge the legal sufficiency of a notice of claim or screening

certificate of merit, provided that the plaintiff has been given notice and opportunity to

correct the alleged defect, and outlines parameters and timeframes for a "request for a more

definite statement," now commonly designated as a "*Hinchman* letter":

> Before a defendant in a lawsuit against a healthcare provider can challenge the legal sufficiency of a plaintiff's pre-suit notice of claim or screening certificate of merit under W. Va. Code, 55-7B-6 [2003], the plaintiff must have been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies.

> Under W. Va. Code, 55–7B–6 [2003], when a healthcare provider receives a pre-suit notice of claim and screening certificate of merit that the healthcare provider believes to be legally defective or insufficient, the healthcare provider may reply within thirty days of the receipt of the notice and certificate with a written request to the claimant for a more definite statement of the notice of claim and screening certificate of merit. The request for a more definite statement must identify with particularity each alleged insufficiency or defect in the notice and certificate and all specific details requested by the defendant. A claimant must be given a reasonable period of time, not to exceed thirty days, to reply to a healthcare provider's request for a more definite statement, and all applicable periods of limitation shall be extended to include such periods of time.

Syl. Pts. 3 and 4, *id.*

The fourth original syllabus point provides that any defects not raised in a

*Hinchman* letter are waived:

> Under W. Va. Code, 55-7B-6 [2003], the making of a request for a more definite statement in response to a notice of claim and screening certificate of merit preserves a party's objections to the legal sufficiency of the notice and certificate

15

as to all matters specifically set forth in the request; all objections to the notice or certificate's legal sufficiency not specifically set forth in the request are waived.

Syl. Pt. 5, *id.* And, finally, *Hinchman* articulates that the primary consideration for a court evaluating legal sufficiency of pre-suit notice is whether the plaintiff made a good faith and reasonable effort to further the statutory purposes for requiring pre-suit notice in the first place:

> In determining whether a notice of claim and certificate are legally sufficient, a reviewing court should apply W. Va. Code, 55–7B–6 [2003] in light of the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims. Therefore, a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes.

Syl. Pt. 6, *id.*

Taken together, while a total failure to provide a screening certificate of merit when required by the MPLA deprives a circuit court of subject matter jurisdiction under *Faircloth*'s reasoning, we cannot conclude that the sufficiency of its contents to the defendant's satisfaction has the same effect.[4] We reach that conclusion based on

---

[4] In *Faircloth*, the Court cited *Keith v. Lawrence*, No. 15-0223, 2015 WL 7628691 (W. Va. Nov. 20, 2015) (memorandum decision) for the proposition that the Court had "affirmed the jurisdictional nature of MPLA pre-suit notice" because, in that case, the Court heard an otherwise interlocutory appeal from an order denying a motion to dismiss for deficient MPLA pre-suit notice because it involved a jurisdictional question. 242 W. Va. at 341, 835 S.E.2d at 585. While we do not, here, call into doubt the Court's conclusion in

16

*Hinchman*'s procedure for challenging a certificate of merit that cannot be conceptually squared with a subject matter jurisdiction analysis. Under its framework, a defendant may not even *challenge* deficiencies in the certificate of merit without first giving the plaintiff the opportunity to cure it, yet, "[i]t is well established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte*[.]" *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 345, 801 S.E.2d 216, 223 (2017). Any deficiencies not specifically set forth in a *Hinchman* letter are waived, and yet, "[w]e have stated categorically that '[s]ubject matter jurisdiction may never be waived.'" *State ex rel. Barden & Robeson Corp. v. Hill*, 208 W. Va. 163, 168, 539 S.E.2d 106, 111 (2000) (quoting

---

*Faircloth* that the fact of pre-suit notice is a jurisdictional prerequisite for filing an action under the MPLA, we do find its reliance on *Lawrence* hasty and mistaken.

Lawrence involved a direct appeal from the denial of a motion to dismiss where the defendant argued that the screening certificate of merit was deficient. The Court first observed that the matter was interlocutory as a denial from a motion to dismiss but applied the collateral order doctrine to justify the exercise of its *appellate* jurisdiction. In so doing, it stated, "*petitioners* contend that the February 2, 2015, order conclusively determined the disputed controversy of the sufficiency of the certificates of merit (and, thus, the circuit court's jurisdiction)." *Id.* at *2 (emphasis added). It then summarily concluded that under the limited facts and circumstances of the case, it agreed with the petitioners that by applying the collateral order doctrine, the interlocutory appeal was properly before the Court. *Id.*

Nowhere in *Lawrence* was it discussed, analyzed, or otherwise established that the pre-suit notice requirements—specifically deficiencies in a screening certificate of merit— were issues of subject matter jurisdiction. Indeed, the motion in *Lawrence* was brought under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, not Rule 12(b)(1). Accordingly, we find *Lawrence* and its incorporation into *Faircloth* of no relevance to our analysis. To the extent *Lawrence* sanctions the use of the collateral order doctrine to permit interlocutory review of denials of motions to dismiss for deficient screening certificates of merit under the auspices of presenting a subject matter jurisdiction question, we clarify in this opinion that it presents no such issue.

17

*Dishman v. Jarrell*, 165 W. Va. 709, 712, 271 S.E.2d 348, 350 (1980)). *See also State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 233, 588 S.E.2d 217, 222 (2003) ("Unlike personal jurisdiction, subject-matter jurisdiction may not be waived or conferred by consent[.]").

Finally, it is not open to dispute that subject matter jurisdiction is an issue of law and must exist as a matter of law. *Id.* ("[Subject matter jurisdiction] must exist as a matter of law for a court to act."); *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001) ("Whether a court has subject matter jurisdiction over an issue is a question of law[.]") In examining the limitation the Legislature placed on the court's ability to adjudicate issues of medical professional negligence, this Court has interpreted West Virginia Code § 55-7B-6 to mean that the "*failure* to provide [pre-suit notice] deprives a circuit court of subject matter jurisdiction." Syl. Pt. 2, in part, *Faircloth* (emphasis added). We do not, however, interpret a challenge to its sufficiency as an additional jurisdictional hurdle to be overcome before a court may even entertain the action.

*Hinchman* asks whether the statutory purposes—filtering frivolous litigation and encouraging settlement of meritorious claims before a complaint is filed—were furthered by the pre-suit notice *actually* given by the plaintiff. *See Hinchman*, Syl. Pt. 6. We see no reason to depart from that analysis. The Southern District of West Virginia, when faced with a challenge to the sufficiency of a screening certificate of merit, aptly explained the distinction we draw here: "[w]hen reviewing for good faith effort, courts do not equate

18

individual deficiencies in the certificate of merit with failure to comply with the MPLA. Rather, courts should look for an attempt by the plaintiff to comply with the MPLA." *Earle v. City of Huntington*, No. CV 3:14-29536, 2016 WL 3198396 at *4 (S.D. W. Va. June 8, 2016).[5]

When evaluating "compliance" for purposes of "serving" a notice of claim under West Virginia Code § 55-7B-6, this Court has similarly explained that the fact of placing the notice in the mail complied with the express statutory notification process. *Elmore v. Triad Hospitals, Inc.*, 220 W. Va. 154, 160-61, 640 S.E.2d 217, 223-24 (2006). The Court in *Elmore* determined that where notice had been served, the suit was not frivolous, and the notice did not impede the defendant's opportunity to mediate pre-suit, dismissal was inconsistent with the pronouncement in *Hinchman* that the pre-suit notice requirements were "not intended to restrict or deny citizens' access to the courts." *Id.* (quoting Syl. Pt. 2, in part, *Hinchman*).

In other words, *Hinchman*'s evaluation of sufficiency is a practical one: it audits for frivolity and assesses prejudice to the healthcare provider, asking whether the given notice impeded the provider's ability to assess the allegations against it for purposes of mediating and settling the case. And, importantly, the sufficiency of the notice is judged

---

[5] As in *Earle*, the notice and screening certificate of merit at issue here do not bear markers of deficiency falling so short of the statutory requirements that it is tantamount to having given no notice at all.

19

against a good faith and reasonable effort. *See Butts v. Berkeley Med. Ctr.*, No. 3:16-CV-53, 2016 WL 11504761 (N.D. W. Va. July 20, 2016) ("[A] review of the certificate should have sufficiently demonstrated that the anticipated suit was not a frivolous one, and likewise should have served to provide the Defendants with notice of the Plaintiffs' intent to file suit and with an opportunity to pursue pre-suit resolution."). We recognize *Hinchman*'s continued viability for assessing pre-suit notice—not as a jurisdictional inquiry—but one merely counterbalancing a healthcare provider's need for *meaningful* notice before a complaint is filed without restricting access to the courts in favor of "legal wrangling about the technicalities of pre-suit notice." *Hinchman*, 217 W. Va. at 386 n.5, 618 S.E.2d 395 n.5 (citing *Wolfsen v. Applegate*, 619 So.2d 1050 (Fla. Ct. App. 1993)).

A subject matter jurisdiction overlay to a defendant's dissatisfaction with a screening certificate of merit—in addition to being inconsistent with *Hinchman*—would invite pedantic criticism in pursuit of procedural dismissals and restrict access to the courts. The pre-suit notice requirements should be applied, in accordance with *Hinchman*, as a check on frivolous litigation and to ensure the parties' opportunity to settle meritorious claims, not as substitute for a complaint or to supplant this Court's notice-pleading standards. The dangers are appreciable here, where the screening certificate of merit is alleged to be deficient, in part, for the Mortons' want of discovery—discovery that, as WVUH points out, they are not entitled to pre-suit under the MPLA's framework. This Court has emphasized that "the medical malpractice statute should not be unnecessarily utilized as an instrument to prevent adjudication on the merits." *Gray*, 218 W. Va. at 570,

20

625 S.E.2d at 332.

### *C. Propriety of Extraordinary Relief*

By way of explanation for the preceding discussion of the standard for issuance of a writ of prohibition, where the litigant contends there is a lack of jurisdiction, the writ issues as a matter of right, but where it is only claimed that the circuit court acted in excess of legitimate authority, a writ *may* issue on a discretionary basis informed by application of the *Hoover* factors. Because, as explained above, the allegedly deficient screening certificate of merit does not deprive the circuit court of jurisdiction, we must refuse the writ of prohibition that WVUH seeks solely on that basis. WVUH conceded at oral argument that it sought a writ of prohibition solely on the alleged lack of jurisdiction. Still, insofar as WVUH's brief argues that the circuit court committed a clear error of law consonant with *Hoover*'s criteria for issuing discretionary writs of prohibition not implicating lack of jurisdiction, we also deny the requested writ of prohibition.

WVUH requests that this Court invoke its original jurisdiction to prohibit enforcement of the circuit court's denial of its motion to dismiss by concluding that the screening certificate of merit was *both* required and deficient. In view of the *Hoover* factors, we find that any error in the conclusion that the MPLA does not apply to the claims herein alleged is not so clear cut as to demand immediate correction by way of extraordinary relief. *See* Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) ("[T]his Court will use prohibition . . . to correct only substantial, clear-cut, legal

21

errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014).

Further, WVUH has not advanced that it was deprived of any pre-suit right implicating *Hoover*'s consideration of prejudice unable to be addressed on appeal, except to the extent WVUH deemed the screening certificate of merit to be deficient. WVUH mediated the case with the Mortons, but the parties were ultimately unsuccessful at reaching a settlement. WVUH does not allege it was ill-prepared to mediate the case based on its perceived deficiencies with the screening certificate of merit, nor has WVUH argued that any other aspect of the MPLA's application is not ultimately correctable on appeal or that appeal is an inadequate remedy. "[T]his court has specifically stated that the writ does not lie to correct 'mere errors' and that it cannot serve as a substitute for appeal[.]" *State ex rel. Williams v. Narick*, 164 W. Va. 632, 635, 264 S.E.2d 851, 854 (1980) (quoting *Handley v. Cook*, 162 W. Va. 629, 631, 252 S.E.2d 147, 148 (1979)).

Finally, we observe that the circuit court did not rule on the sufficiency of the screening certificate of merit, as it found the certificate was altogether unnecessary. In asking this Court to find that the MPLA both applies and that the screening certificate of merit is deficient so as to warrant dismissal of the claims, WVUH asks for a remedy we

cannot even fashion. Having already concluded the issue is not jurisdictional, this Court cannot be the first to pass judgment on the sufficiency of the screening certificates of merit under *Hinchman*, and we cannot prohibit a judgment that was never made. We thus conclude that evaluation under *Hoover* weighs against the propriety of a discretionary writ. Finding that this petition for a writ of prohibition presents neither a court proceeding without jurisdiction nor one exceeding its legitimate powers, we deny the writ of prohibition.

## IV.

## CONCLUSION

For the foregoing reasons, we refuse the requested writ of prohibition to prohibit enforcement of the circuit court's order denying its motion to dismiss for lack of subject matter jurisdiction.

Writ denied.